## CAHEN *v.* BREWSTER, TAX COLLECTOR.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 91. Argued November 9, 1906.—Decided December 24, 1906.

While under former decisions of this court the nature of inheritance taxes has been defined, those decisions do not prescribe the time of their imposition. To have done so would have been to usurp a legislative power not possessed by this court.

A State may exercise its power to impose an inheritance tax at any time during which it holds the property from the legatee; and the Louisiana

inheritance tax law is not void as a deprivation of property without due process of law within the meaning of the Fourteenth Amendment. as to legatees of decedents dying prior to its enactment but whose estates were still undistributed.

A statute imposing a succession tax is not void as against estates not closed, as denying equal protection of the laws, because it does not affect estates which had been actually closed at the time of its enactment.

When the state court which has delivered two decisions declares that the later does not overrule, but distinguishes, the earlier, which it states was decided on considerations having no application to the later one, both decisions must be considered as correct interpretations of the statute construed, and it is not the province of this court to pronounce them contradictory or one to be more decisive than the other.

THE facts are stated in the opinion.

*Mr. Charles Rosen* and *Mr. Gustave Lemle* for the plaintiffs in error:

That an inheritance tax is not a tax on property, but on the privilege or right of inheriting, is no longer open to question. *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283; *Knowlton* v. *Moore,* 178 U. S. 41; *Plummer* v. *Coler,* 178 U. S. 115; 27 Am. & Eng. Ency. of Law, 338.

That the rights of these heirs and legatees vested at the moment of the death of the ancestor is also beyond dispute. Black on Constitutional Prohibitions (1887), 239; Cooley, Const. Lim., 6th ed., 439; Prof. McGehee, Due Process of Law (1906), 142, 144; *Calvitt* v. *Mulhollam,* 12 Rob. (La.) 258; *Womack* v. *Womack,* 2 La. Ann. 339; *Adams* v. *Hill,* 5 La. Ann. 114; *Glassock* v. *Clark,* 33 La. Ann. 584; *Ware* v. *Jones,* 19 La. Ann. 428; *Page* v. *Gas Light Co.,* 7 Rob. (La.) 184; *Addison* v. *Bank,* 15 Louisiana, 527; *Succession of Prevost,* 12 La. Ann. 577; *Armand Heirs* v. *Executors,* 3 Louisiana, 336.

As to the universal legatees, the inheritance of property by them took place at the moment of their testator's death. This privilege or right of inheritance was not exercised subsequently; and, there being no inheritance after the tax was levied, no tax is due.

The prohibition that formerly applied, under the Fifth Amendment, only to the United States, now applies with

equal force, under the Fourteenth Amendment, to the States. They, no more than the United States, can, under the guise of taxation, or other legislation, take private property for public purposes without compensation, or pass retroactive laws that divest vested rights.

This law is not merely retroactive. Remedial legislation that is retrospective is unobjectionable. Retroactive legislation that does not divest vested rights is not in violation of the Federal Constitution. But retroactive legislation that divests vested rights, that interferes with rights already acquired, that imposes a tax for the privilege of inherison where such privilege has been long since exercised, and, therefore, requires payment of such tax merely because it has the physical power to do so by reason of the fact that the owner is, from some delay or other accidental cause, not yet in possession, is a clear taking of property, a clear deprivation of property, without due process of law. Cooley, Const. Lim., 6th ed., 436; *Norman* v. *Heist*, 5 W. & S. 171; *Beall* v. *Beall*, 8 Georgia, 210; *Case of Pell*, 171 N. Y. 48; *Case of Lansing*, 182 N. Y. 238.

The Supreme Court of Louisiana, in holding that as the inheritance was property within the limits of the State, the State could tax it, for the purpose mentioned, until it had passed out of the succession of the testator, erred.

Confusing the tax on the right to inherit with a tax on property, although the property was still within the State, the right of inheritance or succession did not still remain to be exercised.

The clause in question is a denial of the equal protection of the laws.

So far as the tax discriminates between descendants and collaterals, there is no objection. This was expressly decided in the *Magoun case*, but after having first made a class of collaterals or strangers, it taxes some and exempts others—and these, too, inheriting under the same conditions, by the same title, on the same day. This is not classification, and is a denial of the equal protection of the laws.

Arbitrary selection can never be justified by calling it classification. The equal protection demanded by the Fourteenth Amendment forbids this. *Railroad Co.* v. *Ellis*, 165 U. S. 150; *Barbier* v. *Connolly*, 113 U. S. 27, 31; *Cotting* v. *Kansas City Stock Yards*, 183 U. S. 108; *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369; *Railroad & Tel. Co.* v. *Bd. of Equalizers*, 85 Fed. Rep. 302; *Connelly case*, 184 U. S. 540.

*Mr. F. C. Zacharie* for defendants in error:

This court will not review or reverse the decision of the court of Louisiana on any question as to the construction of laws of that State, even though this court might differ in that regard from the opinion and decision of the highest court of that State, in construing its own constitution and laws. 22 Ency. of Pl. & Pr., 326, and cases cited in note 3.

The inheritance or succession tax provided for by the Louisiana constitution, and the act 45 of 1904, passed in pursuance of the power conferred by that instrument, are in nowise in contravention of the provisions of the Constitution of the United States, and the judgment and decree of the Supreme Court of Louisiana should be affirmed and the claim of plaintiffs in error be rejected at their cost. *Carpenter* v. *Pennsylvania*, 17 How. 456; *Orr* v. *Gilman et al.*, 183 U. S. 278.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The case involves the validity, under the Constitution of the United States, of a burden imposed under the inheritance tax law of the State of Louisiana, passed June 28, 1904.

Mathias Levy, a resident of New Orleans, died in that city May 26, 1904. He was unmarried and left no ascendants, and was, therefore, without forced heirs. He left a last will and testament of the date of December 23, 1903, in which he named executors and made sundry particular bequests to charitable institutions. He bequeathed the balance of his estate, in equal shares, to his two nieces, Camille Cahen and

Julie Cahen, constituting them thereby his universal legatees and instituted heirs.

The will was duly probated in the Civil District Court for the Parish of Orleans, May 30, 1904. An inventory of his estate was taken June 9, 1904, and a supplementary inventory August 3, 1904. The inventories showed the total appraised value of the estate to be $64,676.05. Of this amount, after deducting the debts and charges of the estate and particular legacies, there was left, as the portion going to the universal legatees, $42,927.94.

The final accounting and tableau of distribution was filed August 3, 1904, and approved and homologated by judgment August 16, and the funds ordered to be distributed.

October 16 a motion was made for a rule on the executors to show cause why they should not pay over the legacies as ordered. In answer to which the executors replied that they were willing to do so, but that it was announced to them by the president of the school board of the parish that he intended to claim in behalf of said board a tax under the inheritance tax law of the State on the funds in their hands "and the shares coming to said movers." The executors also alleged the unconstitutionality of the tax and prayed that the school board of the parish, through its president, Andrew H. Wilson, be made a party to the proceedings. Wilson appeared and averred that the taxes were due the State and not to the school board, and were collectible by the state tax collector, and "that this suit and the matters at issue herein should be litigated contradictorily with the state tax collector for the district in which the deceased resided when he departed this life."

The tax collector appeared. The agents and attorneys in fact of the legatees answered the demand of the school board to be paid the tax that $10,000 of the estate was in United States bonds, and not subject to taxation by the State, and averred that an inheritance tax was not due "to said board for the reason that said act has no application to the property

under this succession or the legacies due to said movers in the motion aforesaid; that to give it such application would be to make said act retroactive and divest the vested rights of the said movers in said rule, which would be in violation of the constitution of this State, and especially article 166 thereof, and in violation of the Constitution of the United States of America, and especially section 9 of article I, and the Fifth and Fourteenth Amendments thereof, and in violation of the laws of the State and of the land; that it would be a deprivation of property without due process of law and a denial of the equal protection of the laws, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States of America."

Judgment was rendered in favor of the tax collector, condemning the executors to pay the tax, less the amount of United States bonds, and less the charitable and religious bequests. The judgment was affirmed by the Supreme Court of the State.

The law imposes a tax of three per cent "on direct inheritances and donations to ascendants or descendants," and ten per cent upon donations or inheritances to collaterals or strangers. It is provided that the tax is "to be collected on all successions not finally closed and administered upon, and all successions hereafter opened." [1]

---

[1] SECTION 1. Be it enacted by the General Assembly of the State of Louisiana; That there is now, and shall hereafter be levied, solely for the support of the public schools, a tax upon all inheritances, legacies, and donations; provided, no direct inheritance, or donation, to an ascendant or descendant, below ten thousand dollars in amount or value, shall be so taxed; a special inheritance tax, of three per cent on direct inheritances and donations to ascendants or descendants and ten per cent for collateral inheritances and donations to collaterals or strangers; provided bequests to educational, religious or charitable institutions shall be exempt from this tax and provided further that this tax shall not be enforced when the property donated or inherited shall have borne its just proportion of taxes prior to the time of such donation or inheritance; this tax to be collected on all successions not finally closed and administered upon and on all successions hereafter opened.

It will be observed that when Levy died, May 26, 1904, and when the will was probated, May 30, 1904, there was no inheritance tax in Louisiana. The act in controversy was passed June 28, 1904.

In support of the attack made upon the law, it is contended that an inheritance tax is not a tax on property but on the right or privilege of inheriting, and that the right in the case at bar had been exercised at the moment of the testator's death under the then existing law, and "to pass a law exacting such a tax and make it retroactive so as to divest a right previously acquired under then existing laws, is a deprivation of property already acquired, without due process of law, prohibited by the Fourteenth Amendment of the Constitution of the United States."

To sustain their propositions the plaintiffs in error cite certain articles of the Louisiana Civil Code.[1] And it is urged.

---

[1] ARTICLE 940. A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person whom he succeeds.

This rule applies also to testamentary heirs, to instituted heirs and universal legatees, but not to particular legatees.

ARTICLE 941. The right mentioned in the preceding article is acquired by the heir, by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it.

Thus, children, idiots, those who are ignorant of the death of the deceased, are not the less considered as being seized of the succession, though they may be merely seized of right and not in fact.

ARTICLE 942. The heir being considered seized of the succession from the moment of its being opened, the right of possession, which the deceased had, continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession.

ARTICLE 944. The heir being considered as having succeeded to the deceased from the instant of his death, the first effect of this right is that the heir transmits the succession to his own heirs, with the right of accepting or renouncing, although he himself have not accepted it, and even in case he was ignorant that the succession was opened in his favor.

ARTICLE 945. The second effect of this right is to authorize the heir to institute all the actions, even possessory ones, which the deceased had a right to institute, and to prosecute those already commenced. For the heir, in everything, represents the deceased, and is of full right in his place, as well for his rights as his obligations.

as indubitable that, under the law of Louisiana, a succession is acquired by the legal heir immediately after the death of the deceased, and by the express terms of the code this rule applies to testamentary heirs, to instituted heirs and universal legatees. In other words, that the acquisition of the succession by plaintiffs in error was at the very moment of Levy's death, and, therefore, necessarily before the act imposing inheritance taxes was passed. To sustain their view plaintiffs in error cite a number of cases decided prior to the decision of the case at bar, and the case of *Tulane University of Louisiana* v. *Board of Assessors et al.*, 115 Louisiana, 1026, decided since the decision in the case at bar. Having established, as it is contended, that by operation of law the property is transmitted immediately from the testator to the heirs, it is also contended that from the very definition of an inheritance tax none could be imposed on plaintiffs in error as legatees of Levy.

For definitions of an inheritance tax plaintiffs in error adduce *United States* v. *Perkins*, 163 U. S. 625; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283; *Knowlton* v. *Moore*, 178 U. S. 41. The tax was defined in the *Perkins* case to be "not a tax upon the property itself, but upon its transmission by will or descent;" and in the *Magoun* case, "not one on property, but one on the succession." In *Knowlton* v. *Moore* it was said that such taxes "rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested." But these definitions were intended only to distinguish the tax from one on property, and it was not intended to be decided that the tax must attach at the instant of the death of a testator or

---

ARTICLE 1609. When, at the decease of the testator, there are no heirs, to whom a proportion of his property is reserved by law, the universal legatee, by the death of the testator, is seized of right of the effects of the succession, without being bound to demand the delivery thereof.

intestate. In other words, we defined the nature of the tax; we did not prescribe the time of its imposition. To have done the latter would have been to prescribe a rule of succession of estates and usurp a power we did not and do not possess. There is nothing, therefore, in those cases which restrains the power of the State as to the time of the imposition of the tax. It may select the moment of death, or it may exercise its power during any of the time it holds the property from the legatee. "It is not," we said in the *Perkins case,* "until it has yielded its contribution to the State that it becomes the property of the legatee." See also *Carpenter et al.* v. *Commonwealth of Pennsylvania,* 17 How. 456.

We must turn back, therefore, to the law of Louisiana for the solution of the questions presented in the case at bar. But we are not required to reconcile the Louisiana decisions. We accept that in the case at bar as a correct interpretation of the code of the State. Nor may we regard *Tulane University* v. *Board of Assessors,* as irreconcilable with it. That case was brought to enjoin the collection of state and city taxes which had been assessed against the succession of A. C. Hutchinson. The plaintiff university was the universal legatee of Hutchinson, and its property was exempt from taxation under the constitution of the State. It is true the court said that the code of the State "left no room for doubt or surmise as to the fact of the property of a deceased person being transmitted directly and immediately to the legal heir, or, in the absence of forced heirs, to the universal legatee, without any intermediate stage, when it would be vested in the successive representative or in the legal abstract, called 'succession.' "

But the decision in the case at bar was not overruled, but distinguished as follows: "The case of succession of Levy was decided from considerations peculiar to an inheritance tax, and which can have no application to the instant case. This inheritance tax was held to be due notwithstanding that, under the provisions of the code, the ownership of the prop-

erty passed to the heirs. The maxim, '*Le mort saisit le vif,*' was expressly recognized." Both decisions, therefore, must be considered as correct interpretations of the code of the State. It is not our province to pronounce one more decisive than the other, or to pronounce a contradiction between them, which the court which delivered both of them has declared does not exist. We must assume that the *Tulane case* approved the view expressed in the case at bar of the rights of legatees, as follows: "Furthermore, we have said, the legatees acquired no vested right to the property bequeathed which could enable them to successfully defend their inheritance against the demand of the State for the inheritance tax. It was property within the limits of the State, which the State could tax, for purposes mentioned, until it had passed out of the succession of the testator."

Plaintiffs in error also contended that the statute denied them the equal protection of the laws. This contention is based on the following provision of the statute: "This tax to be collected on all successions not finally closed and administered upon, and on all successions hereafter opened."

Successions which have been closed, it is said, are exempt from the tax, and a discrimination is made between heirs whose rights have become fixed and vested on the same day. Counsel say: "The closing of the succession cannot affect the question as to when the rights of the heirs vested; and cannot be a cause for differentiation among the heirs; and such a classification is purely arbitrary. Besides, such a classification rests on the theory that the tax is one on property, when in fact it is one on the right of inheritance." But, as we understand, the Supreme Court made the validity of the tax depend upon the very fact which counsel attack as an improper basis of classification. The court decided that the property bequeathed was property the State could tax, "until it had passed out of the succession of the testator." It was certainly not improper classification to make the tax depend upon a fact without which it would have been invalid. In

other words, those who are subject to be taxed cannot complain that they are denied the equal protection of the laws because those who cannot legally be taxed are not taxed.

*Judgment affirmed.*