LORING A. COVER, JOHN M. STECK AND HARRY R. KERN, EXECUTORS, ESTATE OF THOMAS COVER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34842.    Promulgated October 31, 1929.

*Swagar Sherley, Esq.,* for the petitioners.
*John D. Foley, Esq.,* and *Lloyd W. Creason, Esq.,* for the respondent.

1180

OPINION.

LANSDON: The parties have stipulated that the declarations of trust were not made in contemplation of death and that they were not such transfers as are embraced within the terms of section 302 (c) of the Revenue Act of 1926, which section deals with transfers made in contemplation of death and with those intended to take effect in possession or enjoyment at or after death.

The petitioners contend that the transfers herein involved were not intended to take effect in possession or enjoyment at or after death; that they were not transfers the enjoyment of which was subject to any change at the date of decedent's death through the exercise of a power to alter, amend or revoke, within the meaning of section 302 (d) of the Revenue Act of 1926; and that section 302 is unconstitutional in so far as it includes as a part of the gross estate property transferred prior to the enactment of the Revenue Act of 1926.

Section 302 of the Revenue Act of 1926 provides, so far as material in the instant proceeding, as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*   \*   \*   \*   \*   \*   \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.   \*   \*   \*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.   \*   \*   \*

\*   \*   \*   \*   \*   \*   \*

(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

\*   \*   \*   \*   \*   \*   \*

In the declaration of trust dated January 17, 1918, Cover reserved to himself "the right   \*   \*   \*   to alter, change, or modify the trust hereby created without the right to withdraw any part of the principal." Any such change was to be "evidenced by a paper writing under my hand and seal and lodged with said Trustee during my life-time." This, petitioners argue, was such a restricted reservation of power as to leave none of the economic benefits in the settlor and that the reservation was for the benefit of that class in whose interest the trust was created, namely, his children and descendants, rather than for the benefit of the settlor. We see nothing in the trust deed to warrant such a conclusion. As we read that instrument, the settlor held complete control over the distribution of the trust property up to the moment of his death, except that he could not withdraw the principal. He could have directed that one beneficiary be substituted for another; that the trust property be distributed among new beneficiaries; that the income be paid to himself; or that it should accumulate. These are by no means the least substantial of the legal incidents of ownership. The Supreme Court has held, in *Chase National Bank* v. *United States*, 278 U. S. 327, that "the freeing of the remainder of the possibility of the exercise of that power" was sufficient to subject property to a tax.

In his brief counsel for the petitioners stressed the point that the beneficiaries of the trust took vested rights, subject only to being divested to the extent that the power to amend, alter, or modify reserved in the settlor might be exercised and that such a reservation of power does not prevent the vesting of an estate. This argument is completely answered by the Supreme Court in *Chase National Bank* v. *United States, supra*. In that case the decedent had taken out life insurance payable to his wife, reserving to himself the right to change the beneficiary. The face value of the policies was held to be subject to the estate tax. It was urged in that case that the wife's right vested prior to her husband's death. The court held that even if that were true, it would not be material and upon the question of vesting said, quoting from *Saltonstall* v. *Saltonstall*, 276 U. S. 260:

So long as the privilege of succession has not been fully exercised it may be reached by the tax. See *Cahen* v. *Brewster*, 203 U. S. 543; *Orr* v. *Gilman*, 183 U. S. 278; *Chanler* v. *Kelsey, supra; Moffitt* v. *Kelly, supra; Nickel* v. *Cole, supra*. And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices. A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. *Bullen* v. *Wisconsin*, 240 U. S. 625. The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another.

In the instant proceeding the decedent had many substantial rights with respect to the trust property, which ceased only at his death. It is this cessation of rights of the decedent which is the subject of the estate tax. *Chase National Bank* v. *United States, supra; Edwards* v. *Slocum*, 264 U. S. 61; *Y. M. C. A.* v. *Davis*, 264 U. S. 47; *N. Y. Trust Co.* v. *Eisner*, 256 U. S. 345. In the *Chase National Bank* case, *supra*, the Supreme Court stated:

Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise which latter may be subjected to a privilege tax, *Chanler* v. *Kelsey*, 205 U. S. 466. "To make a distinction between a general power and a limitation in fee is to grasp at a shadow while the substance escapes." *Sugden, Powers* (8th Ed.) 396; see *Gray, Perpetuities* (3d Ed. 1915) Sec. 526 (c). And the non-exercise of the power may be as much a disposition of property testamentary in nature as would be its exercise at death, *Bullen* v. *Wisconsin*, 240 U. S. 625; cf. *United States* v. *Robbins*, 269 U. S. 315, 327; *Cohen* v. *Samuels, supra*.

It is argued that the *Chase National Bank* case does not apply here, since Cover could not have withdrawn the corpus of the trust. That fact seems immaterial, however, since he had complete control over the benefits to be bestowed upon the beneficiaries. In the

*Chase National Bank* case the insured could have recovered during his life only the cash surrender value of the policy and yet the Supreme Court held that the face value of the policy was properly included in computing his gross estate at death.

In the recent Supreme Court case of *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, there were seven trusts involved, two of which contained a reservation of the right to revoke absolutely; the remaining five reserving the power to alter, change or modify with the consent of the beneficiaries. The court there stated, referring to the five trusts:

If it be assumed that the power to modify the trust was broad enough to authorize disposition of the trust property among new beneficiaries or to revoke the trusts still it was not one vested in the settlor alone, as were the reserved powers of the two trusts. He could not effect any change in the beneficial interest in the trusts without the consent, in the case of four of the trusts, of the person entitled to that interest and in the case of one trust without the consent of a majority of those so entitled. Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial and consequently the adverse, interest, the trust for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute.

In the instant case power to alter, change or modify was reserved to decedent alone. He had absolute control of the beneficial interest. We think the transfers herein involved are more like the two trusts in the *Reinecke* case which the Supreme Court held were subject to the estate tax.

Subsection (h) of the Revenue Act of 1926 expressly makes section 302 retroactive. A similar section in the 1918 Act was held to be unconstitutional by the Supreme Court in *Nichols* v. *Coolidge*, 274 U. S. 531, since it attempted to include in the gross estate property transferred prior to the enactment of the statute. The constitutionality of section 402 of the Revenue Act of 1921, which corresponds to section 302 of the Revenue Act of 1926, was upheld by the Supreme Court in *Reinecke* v. *Northern Trust Co.*, and *Chase National Bank* v. *United States, supra*, where a transfer was made before the enactment of the statute, but which was subject to a power of revocation in the transferor terminable at his death. The court stated in the *Reinecke* case:

As to the two trusts, it is argued that since they were created long before the passage of any statute imposing an estate tax the taxing statute if applied to them is unconstitutional and void, because retroactive, within the ruling of *Nichols* v. *Coolidge*, 274 U. S. 531. In that case it was held that the provisions of the similar section 402 of the 1918 Act, 40 Stat. 1097, making it applicable to trusts created before the passage of the act was in conflict with the Fifth Amendment of the federal Constitution and void as respects transfers completed before any such statute was enacted. But in No. 77, *Chase National*

*Bank* v. *United States*, 278 U. S. 327, decided this day, the decision is rested on the ground, earlier suggested with respect to the Fourteenth Amendment in *Saltonstall* v. *Saltonstall*, 276 U. S. 260, 271, that a transfer made before the enactment of the statute now in question and subject to a power of revocation in the transferor, terminable at his death, is not complete until his death and hence section 402, as applied to it, is not retroactive where his death follows the passage of the statute. For that reason, stated more at length in our opinion in *Chase National Bank* v. *United States*, *supra*, we hold that the tax was rightly imposed on the transfers of the corpus of the two trusts and as to them the judgment of the court of appeals should be reversed.

It follows that the value of the property constituting the corpus of the trusts, plus the undistributed income which had accrued at the date of decedent's death, should be included in computing the gross estate of decedent for estate-tax purposes. See *McCaughn* v. *Fidelity Trust Co.*, 34 Fed. (2d) 443.

Pursuant to the stipulation of the parties, the deficiency herein determined should be credited with inheritance taxes paid to the State of Virginia.

Reviewed by the Board.

*Decision will be entered under Rule 50.*