## No. 14,585.

PEOPLE EX REL. ROGERS *v.* ESTATE OF WATERMAN ET AL.

(116 P. [2d] 204)

Decided June 23, 1941.   Rehearing denied July 28, 1941.

Mr. Byron G. Rogers, Attorney General, Mr. J. Glenn Donaldson, Assistant, Mr. C. E. Sydner, Assistant, Mr. Charles H. Queary, Special Assistant, Mr. Luke J. Kavanaugh, of counsel, Mr. Gail L. Ireland, Attorney General, Mr. Berton T. Gobble, Assistant, for plaintiff in error.

Mr. Henry McAllister, Mr. John L. J. Hart, Messrs. Mitchell, Taylor, Capron & Marsh, for defendants in error.

*En Banc.*

Mr. Justice Otto Bock delivered the opinion of the court.

This controversy involves the validity of inheritance and succession taxes on transfer inter vivos made in trust to the town of Waitsfield, Vermont, and the University of Vermont.

August 26, 1937, the inheritance tax commissioner filed his amended report in the county court of Denver, in which there were included as assessable items a $2,000 gift to the town of Waitsfield and the remainder of the trust corpus, at a valuation of $801,539.78, to the University of Vermont. Upon the filing of this report the county court entered its formal order assessing a tax upon these transfers. There is no controversy as to the correctness of the amount of the tax. To this report defendants in error—hereinafter called objectors—filed objections, claiming nonliability of succession tax, on the ground, among others: (1) That the assessment on the transfer constituted an impairment of the obligations of contracts, contrary to and in violation of section 10 of article I of the Constitution of the United States and of section 11 of article II of the Constitution of the state of Colorado; (2) that to subject objectors to the succession tax would deprive them of liberty and property without due process of law, and deny to each of them the equal protection of the law, contrary to and in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States, and of section 25 of article II of the Constitution of the state of Colorado, which provide that no person shall be deprived of life, liberty or property without due process of law; (3) that they constitute a law retrospective in its operation, contrary to and in violation of section 11 of article II of the Constitution of the state of Colorado; and (4) that the taxes payable upon the transfers here involved must be limited to those prescribed by the act of 1927. These objections were sustained by the county court and the assessments modified accordingly. Plaintiff in error—hereinafter designated as the state—assigns error and seeks reversal. The pertinent facts are as follows:

Charles W. Waterman, a resident of Colorado, to whom we hereinafter refer as settlor or decedent, on or about March 24, and April 11, 1932, executed and delivered to the City Bank Farmers Trust Company, a New York

corporation, and Elroy N. Clark, a resident of Colorado, as trustees, two trust indentures, designated as Trusts "A" and "B", respectively. Both documents are to the same effect. Under them the trustees were to manage, invest and reinvest trust property, and after deducting all charges and expenses of the trust, pay the net income from the trust property to settlor during his natural life, and after his death, to pay the same to settlor's wife during her natural life, and under certain conditions, the principal. Each indenture provides that the corpus of the trust fund "shall immediately on the death of the Settlor's said wife, or upon the death of the Settlor, if his said wife shall predecease him, be forthwith delivered to and paid over to the University of Vermont." Each of the indentures also provided, "After the Settlor's death the Trustees may apply to the use of the Settlor's said wife so much of the principal of the trust and at such time or times, as in their discretion they may deem advisable for her proper care, comfort and support." In each of the documents settlor reserved the right to amend or revoke the trust, in whole or in part. Decedent died August 27, 1932, survived by his wife, Anna R. Waterman, who died some time after the trial of the instant case in the county court. The corpus of the trust is now in the hands of the trustees, and no part thereof ever has been delivered or paid by them to the beneficiaries here involved. The property upon which the tax valuation is based consists entirely of intangibles, the situs of which, since the creation of the trust, has been in the custody of the corporate trustee in New York City. After the death of settlor no transactions involving the trust property could be undertaken without the written consent and approval of Elroy N. Clark, trustee, at all times a resident of Colorado. No administration proceedings of the estate of decedent ever have been instituted in any court anywhere. At the time of the execution of the trust deeds, and at the time of decedent's death, the succession tax law in effect was

chapter 114, Session Laws of 1927, page 391, which provided for an exemption upon all transfers to educational institutions and political subdivisions of the state wheresoever situated (subdivision 2[a], section 3, chapter 114, supra). It is agreed that the transfers here involved are to a bona fide political subdivision and educational institution without the state of Colorado. In 1933 the legislature amended this section, limiting such exemptions to property situated in this state and limited for use within this state (subdivision 2[a], section 3, chapter 106, Session Laws of 1933). In 1935 it again considered such exemptions and amended the 1927 act limiting the exemptions to property for use within this state, withdrawing the exemptions granted as to all transfers made prior to the 1935 act, then pending, for collection of any taxes due the state and where the property had not been delivered to the distributees and received by them, whether the decedent died before or after the passage of the act (subdivision 2[a], section 3, chapter 134, Session Laws of 1935, section 15, chapter 85, Colorado Statutes Annotated, 1935).

The state, in support of its assignments of error, contends: (1) That the inheritance and succession-tax statutes of Colorado provide a tax upon the privilege of succession; (2) that so long as the privilege of succession has not been fully exercised it may be reached by the imposition of a tax or the removal of an exemption; (3) that the privilege of succession to the transfers had not been fully exercised prior to the death of the survivor of the life interest, and the delivery of the property, and that therefore the transfer was fully taxable at the time of the adoption of the 1935 act; (4) that the remainder of the gift does not vest at any time prior to the actual transfer of the trust property to the beneficiaries; (5) that title to the property was at all times in the trustees, where it still is, and that the right of the beneficiaries to receive it was contingent upon the failure of settlor to revoke the trust during his lifetime

and upon the failure of the trustees to expend the principal of the trust in stipulated payments to settlor's wife after his death and for her care, comfort and support; (6) that so long as the trust property remained undistributed to the beneficiaries it was the province of the legislature to remove the existing exemptions and apply the tax to the transfers without violating the constitutional guaranties upon which trustees rely.

The law upon which the succession or transfer tax here involved is based is found in the following statutory provisions: "The word 'transfer' as used in this chapter shall be taken to include the passing of property * * * in possession or enjoyment, present or future * * * by * * * succession * * * grant, deed * * * gift in the manner herein described." Section 3, chapter 85, '35 C.S.A. "A tax is hereby imposed * * * upon transfers, in trust or otherwise, of the following property * * * : (a) When the transfer is from a resident of this state— * * * 3. All intangible personal property, wheresoever the notes, bonds, stock certificates, or other evidence, if any, thereof, may be physically located, or the banks or other debtors may be located or domiciled. * * * ." Section 6, ibid. "The transfers enumerated in the preceding section shall be taxable if made: * * * (d) By gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor. * * * ." Section 7 ibid. "There shall be exempt from the tax imposed by this chapter all transfers to * * * any state * * * or any political subdivision thereof, * * * any public institution, society, association, or trust formed for charitable, educational, or religious purposes * * * ; provided, however, that the exemptions allowed under this paragraph shall apply only to property limited for use within this state. This chapter shall take effect from its passage and shall apply to all suits and proceedings pending for the collection of any taxes due the state and to all undistributed estates of decedents in the hands of administrators, execu-

tors or trustees, whether or not said estates are pending in court, and it is hereby declared to be the intent and purpose of this chapter to withdraw the exemption of such tax from all transfers of property not limited for use within this state unless before the passage of this chapter such property has been delivered to the heirs and distributees and received by them, whether the decedent died before or after the passage of this chapter." Section 15, ibid.

■ With regard to the first contention of counsel for the state, there cannot now be any dispute in this jurisdiction concerning the nature of this tax; it is a succession tax imposed upon the privilege of receiving property, based upon a transfer and is laid upon the beneficiary. *Millikin v. People,* 106 Colo. 6, 102 P. (2d) 901. That also has been the uniform holding of all the courts of last resort which have passed upon similar statutes. *Saltonstall v. Saltonstall,* 276 U.S. 260, 48 Sup. Ct. 225, 72 L. Ed. 565; *Blodgett v. Bridgeport City Trust Co.,* 115 Conn. 127, 161 Atl. 83; *In re Lowengart's Estate,* 160 Ore. 118, 84 P. (2d) 105; *Orr v. Gilman,* 183 U.S. 278, 22 Sup. Ct. 213, 46 L. Ed. 196; *Cahen v. Brewster,* 203 U.S. 543, 27 Sup. Ct. 174, 51 L. Ed. 310; *Chanler v. Kelsey,* 205 U.S. 466, 27 Sup. Ct. 550, 51 L. Ed. 882; *Moffitt v. Kelly,* 218 U.S. 400, 31 Sup. Ct. 79, 54 L. Ed. 1086; *Nickel v. Cole,* 256 U.S. 222, 41 Sup. Ct. 467, 65 L. Ed. 900. In the Saltonstall case, Mr. Justice Stone, in discussing a tax law of Massachusetts similar to that in the case at bar, makes the following statement found on page 269 of the reported opinion: "In this and earlier cases the Massachusetts court had held that the tax authorized by these statutes is a tax upon 'succession' which includes the 'privileges enjoyed by the beneficiary of succeeding to the possession and enjoyment of property'." It is clear that the tax under consideration in the instant case is one upon the privilege granted to the beneficiaries to succeed to the "possession or enjoyment" of the property of settlor.

██ The primary problem before us is the time element of taxability. Objectors here contend that this occurred at the time of the death of settlor, it being asserted that at that moment the beneficiaries became vested with the remainder of the property involved. Counsel for the state contend that the property becomes taxable at any time before the beneficiaries, by transfer, obtain possession or enjoyment of the property. We think the latter contention is correct and is sustained by practically all of the authorities. In the opinion in the Saltonstall case, on page 271, is the following statement: "So long as the privilege of succession has not been fully exercised it may be reached by the tax. See *Cahen v. Brewster,* 203 U.S. 543; *Orr v. Gilman,* 183 U.S. 278; *Chanler v. Kelsey, supra; Moffitt v. Kelly, supra; Nickel v. Cole, supra.* And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices."

It is clear from the trust indentures that settlor intended to retain during his life, and during the life of his wife, all of the economic benefits of the trust property, and at no time during the life of settlor or the survivor could there be any shifting of such economic benefits of the property to either of the beneficiaries. It inevitably follows that taxability occurs at any time prior to succession by possession or enjoyment by the beneficiaries, which could not here have happened before the death of the widow and the enactment of the 1935 act. Thus, there could be no consummation of the gifts to the beneficiaries until they had come into possession or enjoyment or until they were entitled thereto. There can here be no question that the tax imposed was prior to the time the beneficiaries were entitled to actual possession of the trust property.

■■ Undoubtedly, the legislative power may select the event of possession or enjoyment of property as a proper occasion for the imposition of a succession tax. *Vanderbilt v. Eidman,* 196 U.S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563; *Hertz v. Woodman,* 218 U.S. 205, 30 Sup. Ct. 621, 54 L. Ed. 1001; *Cahen v. Brewster, supra.* Since the incident of the tax is the shifting of economic benefits in possession or enjoyment and not the conveyance of a mere legal title, the test of constitutionality must be related thereto. *Chanler v. Kelsey, supra; Chase National Bank v. United States,* 278 U.S. 327, 49 Sup. Ct. 126, 73 L. Ed. 405. The essential point is as to when succession becomes complete by actual possession or enjoyment, and all claims of constitutional infirmities interposed by objectors must be tested as of the date of that event. So tested, they are without merit. Under such a construction, there is no retroactive effect, because the 1935 law was enacted before there could be any actual possession or enjoyment by the beneficiaries of the gifts granted through the medium of the trust indentures. *Blodgett v. Bridgeport City Trust Co., supra.* Its effect was prospective and not retrospective.

■■ To sustain the inapplicability of the succession tax to the gifts here involved on constitutional grounds counsel for objectors primarily rely upon the case of *Coolidge v. Long,* 282 U.S. 582, 51 Sup. Ct. 306, 75 L. Ed. 562. In that case the court, by a five to four decision, found against liability for the tax on the ground that under the facts and circumstances of that case application of the tax statute would offend the due-process and contract clauses of the federal Constitution. In view of the other United States Supreme Court authorities cited above, it is our opinion that the decision in the Coolidge case may be considered only as an authority as applied to the facts therein disclosed, and it is apparent that the facts in that case are readily distinguishable from those in the case at bar. In the Coolidge case the court held that interests of the remaindermen vested

at the date of the creation of the trust, many years prior to the passage of the taxing act. Here, counsel concede that the estate is subject to the 1927 act, which was passed prior to the creation of the trust in 1932, but deny the application of the amendments to the 1927 act passed in 1933 and 1935, which relate solely to the withdrawal of exemptions, and they contend that the estate vested in the beneficiaries at bar at the death of settlor. In the Coolidge case the settlors divested themselves of all control over the principal and the power to revoke the trust. Here, settlor retained the power to revoke, and thereby did not divest himself of the control over the principal; moreover, he reserved the right in the trustees to apply any or all of the principal to the support of the wife during her lifetime. The interests of the beneficiaries were, therefore, contingent upon the death of the surviving widow, there being no certainty that any sum would remain for them. In the Coolidge case the facts permitted the court to say that the vesting of actual possession and enjoyment rested upon the happening of an event, which must inevitably happen by the "efflux of time." Here, there always was a possibility, until the death of the wife, that the trustees might apply all of the principal to her support, in which event there would be nothing left for the beneficiaries to possess and enjoy. There could, therefore, be a failure as to beneficiaries, while in the Coolidge case the court held there could not. In that case the court further held that the trust deeds were contracts within the meaning of the contract clause of the federal Constitution, having been fully executed prior to the taking effect of the law under which the tax was assessed. Here, the tax is claimed under the 1927 act, as amended in 1933 and 1935. The trust indentures were signed and delivered subsequent to the 1927 act, but never fully executed, and the amendments relate solely to the withdrawal of exemptions which, prior to their enactment, would have relieved the beneficiaries from the succes-

sion tax. Exemptions are matters of grace and not of right. We do not find a contractual basis which would be affected by the removal of exemptions under a tax law such as we have before us. *Blodgett v. Bridgeport City Trust Co., supra;* Cooley on Taxation (4th ed.), p. 1469, §701; 2 Cooley's Constitutional Limitations (8th ed.), p. 792; 61 C.J., p. 407, §421. Since the exemption was withdrawn by the state as to a tax imposed on the privilege of succession before this privilege was fully exercised, there is no impairment of any obligation of contract. See, also, *Moffitt v. Kelly, supra; Lake Superior Mines v. Lord,* 271 U.S. 577, 46 Sup. Ct. 627, 70 L. Ed. 1093. For the same reason, and others not necessary to enumerate, there is here no invasion of the due-process-of-law clauses of the federal and state Constitutions (*Binney v. Long,* 299 U.S. 280, 288, 57 Sup. Ct. 206, 81 L. Ed. 239) unless it relates to the question of taxable jurisdiction hereinafter discussed. There is here no contention that there has been any infringement of the equal-protection clause of the Fourteenth Amendment.

██ Because of the situs of the intangible personal property here involved, which always, since the creation of the trust, has been in New York City, objectors contended in the lower court that it was without the jurisdiction of the state; that it was beyond its taxing power, and that the assessment was made without constitutional authority, which contentions the trial court overruled. Since this ruling the United States Supreme Court has definitely settled the question of the taxable situs of intangible personal property in the cases of *Curry v. McCanless,* 307 U.S. 357, 59 Sup. Ct. 900, 83 L. Ed. 1339, and *Graves v. Elliott,* 307 U.S. 383, 59 Sup. Ct. 913, 83 L. Ed. 1356. Objectors here concede, in view of these decisions, that the trust estates involved are subject to the tax under the 1927 act, which was in force at the time of settlor's death. They maintain, however, that after his death, because his right to receive income and revoke, immediately ended, the trust

estates for taxation purposes thereafter were beyond the tax jurisdiction of Colorado. This reasoning fails to take into account that the Colorado tax jurisdiction is based upon the domicile of decedent, not here disputed as being in this state. Decedent being a resident of Colorado, a tax was imposed upon a transfer by him in trust of all intangible personal property wheresoever located, and assessed against the beneficiaries of such trust, which transfer might take effect "in possession or enjoyment" in the present or future, at or after the death of the transferor. The tax liability here rests upon the domicile of settlor, not upon the situs of the intangibles. This liability was not curtailed by the death of settlor and the cessation of his power to receive income and revoke the trust. We know of no such limitations under the asserted circumstances. Having granted, through the trust indentures, the privilege of succession to intangible property over which he retained absolute control until death, the tax liability relates to such transfers, whether the possession or enjoyment by the beneficiaries occurred "at or after the death of the transferor." The attempt of objectors to split this tax liability by limiting it solely to possession or enjoyment at death has no basis in law. His continuous domicile in Colorado until his death provides ample jurisdiction over all the transfers included in the two trust indentures. His domicile and citizenship laid upon him the obligation to contribute, out of all of his possessions, to the support of the government in such measure as the commonwealth by its legislative branch might determine. This, it has been held, is the constitutional basis for imposing the tax here in controversy. In *Curry v. McCanless, supra,* the court said (pp. 366, 367): "The power to tax 'is an incident of sovereignty, and is coextensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from

taxation.' *McCulloch v. Maryland,* 4 Wheat. 316, 429. But this does not mean that the sovereign power of the state does not extend over intangibles of a domiciled resident because they have no physical location within its territory, or that its power to tax is lost because we may choose to say they are located elsewhere. A jurisdiction which does not depend on physical presence within the state is not lost by declaring that it is absent. From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not been thought to depend on any factor other than the domicile of the owner within the taxing state, or to compel the attribution to intangibles of a physical presence within its territory, as though they were chattels, in order to support the tax. *Carpenter v. Pennsylvania,* 17 How. 456; *Kirtland v. Hotchkiss,* 100 U.S. 491; *Hawley v. Malden,* 232 U.S. 1; *Bullen v. Wisconsin,* 240 U.S. 625; *Cream of Wheat Co. v. Grand Forks,* 253 U.S. 325; *Blodgett v. Silberman,* 277 U.S. 1; *Farmers Loan & Trust Co. v. Minnesota, supra; Baldwin v. Missouri, supra; Beidler v. South Carolina,* 282 U.S. 1; *First National Bank v. Maine, supra; Virginia v. Imperial Coal Sales Co.,* 293 U.S. 15; *Schuylkill Trust Co. v. Pennsylvania,* 302 U.S. 506."

We are aware of authorities which have held otherwise on the question of taxability at situs. These were all prior to the decision in *Curry v. McCanless, supra,* and must now be considered as not applicable to the problem before us. Whether the residence of one of the trustees, which at all times was in Colorado, is a substantial factor on which taxable jurisdiction may be based in this state, in view of our conclusions, it is not necessary to determine. The trial court committed error

in modifying the original assessment of August 26, 1937, in exempting therefrom the transfers to the University of Vermont and Town of Waitsfield.

Whether interest may be waived or reduced on the transfers above mentioned, as provided by section 35, chapter 85, '35 C.S.A., is a matter for determination by the county court. In our opinion the record discloses sufficient facts to show reasonable cause to permit either waiver or reduction of the interest.

The judgment and order modifying the original assessment of August 26, 1937, by exempting the transfers to the University of Vermont and the Town of Waitsfield, is reversed and the cause remanded with directions to fix the tax on such transfers as found in said original assessment order. The lower court also is directed to exercise its statutory authority in procuring a waiver or reduction of interest thereon.

MR. CHIEF JUSTICE FRANCIS E. BOUCK dissents on the ground that the judgment of the county court was right and should be affirmed.

MR. JUSTICE YOUNG and MR. JUSTICE HILLIARD not participating.