## No. 16,012.

### ESTATE OF WINTERMEYER.
### HOGAN, EXECUTRIX *v.* PEOPLE EX REL. HINKLEY, ATTORNEY GENERAL ET AL.
(212 P. [2d] 863)

Decided November 14, 1949.   Rehearing denied December 19, 1949.

Mr. HAROLD H. WIDNEY, Mr. GEORGE HETHERINGTON, for plaintiffs in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. GEORGE K. THOMAS, Assistant, Mr. BERTON T. GOBBLE, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFFS in error, to no avail, protested an increased levy by the Inheritance Tax Commissioner. They were

unsuccessful in subsequent hearings in the county and district courts and come here seeking review.

Both plaintiffs in error are beneficiaries under the will of Thurza Wintermeyer, deceased. Both were adults when adopted by Thurza Wintermeyer as her daughters. Mrs. Wintermeyer predeceased them, leaving a will, duly admitted to probate, which provided specific legacies of $1,000 for Irene G. Slocum, and $15,000 for May C. Hogan. The latter also was named as sole residuary legatee and executrix. The executrix computed and paid Colorado inheritance tax on these legacies at the rates for children under classification "A," those rates being: "2 per cent not exceeding $50,000.00. 4 per cent on the excess over $50,000.00 and not exceeding $75,000.00. 5 per cent on the excess over $75,000.00 and not exceeding $100,000.00. 7 per cent on the excess over $100,000.00 and not exceeding $150,000.00 * * *"

The inheritance tax department, after learning that the two legatees appearing here had been adopted by the testatrix after they were twenty-one, levied an additional assessment against the estate raising the tax levied against the succession of Irene G. Slocum from nothing to $70.00 and the assessment against the succession of May C. Hogan from $1,268.48 to $17,203.15. The net difference in the assessments, $16,004.67, came about from taxing plaintiffs in error as strangers, under classification "D," rather than as children, classification "A." The difference is attributable to two factors, a difference in exemption in the two classifications and also a difference in rates, strangers not only not having the exemptions granted to children, but also being taxed at higher rates than children.

This action of the inheritance tax department was based on a 1941 amendment to the inheritance tax law (S.L. '41, p. 472) which amended section 3 of the 1933 act (sec. 14, art. 3, c. 85, '35 C.S.A.). The pertinent paragraph, with the amending proviso shown in italics, reads as follows: "Class A. Father, mother, husband, wife,

child, or any child or children legally adopted as such, or to any lineal descendant of such decedent born in lawful wedlock; *provided, however, that for the purpose of this act no person shall be considered legally adopted unless the adoption decree was entered prior to such person reaching the age of twenty-one (21) years."* Plaintiffs' three specifications of error involve the validity of this amendment.

The first specification is that the trial court erred in not finding and decreeing that the legislative section in question is special legislation and repugnant to section 25, article V, of the Colorado Constitution. The salient provisions of the section read as follows: "The general assembly shall not pass local or special laws in any of the following enumerated cases * * * changing the law of descent * * *. In all other cases, where a general law can be made applicable, no special law shall be enacted."

Under this specification it also is argued that the amendment violates the 14th amendment of the United States Constitution, in that it denies to plaintiffs "the equal protection of the laws."

The second specification is that the court erred in basing its decision on the ground of "exemption" which was not an issue in the case.

We discuss these two specifications together because the Attorney General, in his argument, and the trial court, in its judgment, apparently disposed of the arguments raised by plaintiffs in these two specifications on the theory that the difference between the tax assessed against the child adopted while still a minor and the tax assessed against the child adopted after reaching majority was solely a difference in the exemptions allowed in those respective situations. Thus the trial court, in its judgment, used these words:

"Exemptions are, as denominated, matters of grace and not of right, and while at first blush it appears that this is changing the laws of descent, the legislation does not do that. It denies to a certain class of people a con-

sideration in the form of an exemption from taxation. I feel compelled to hold, after listening to the very able argument on both sides, that this is not class legislation and that the statute is valid, even though it takes away from those adopted persons whose status is changed after they reach the age of 21 the exemption privileges which are permitted to natural children and those who come under that age limit.

"The court accordingly finds that this denial of the exemption is not class legislation and is not unconstitutional. It is a valid exercise of legislative power in connection with taxation matters."

The following is quoted from the Attorney General's brief: "We are unable to read this statute and reach any other conclusion than that it changes the amount of exemption to certain classes of persons defined by the statutes as in Class "A" by reducing the same from $50,000.00 to $2,500.00." Then, having reached that conclusion, the attorney general relies upon *People ex rel. v. Estate of Waterman,* 108 Colo. 263, 116 P. (2d) 204, in support of the proposition that exemptions are matters of grace and not of right. We believe this contention is based upon misinterpretation of both the inheritance tax law and the opinion in *People ex rel. v. Estate of Waterman, supra.* An examination of the law shows that each beneficiary listed in Class A is entitled to an exemption of $10,000.00 (other than the $20,000.00 exemption allowed a widow) on the valuation of any property to which he or she succeeds. Each beneficiary who falls under the D classification is not taxed on property he receives by bequest or inheritance up to the amount of $500.00 in valuation; but if he receives property in value above $500.00 he is taxed on the succession to the full amount of its value at a graduating rate, commencing at 7% of the value. Thus, as we have seen in the instant case, Mrs. Slocum, when taxed as a child of testatrix, on her $1,000 legacy would pay no tax because of the $10,000.00 exemption to which she is entitled.

When taxed as a stranger, however, under the 1941 amendment on her $1,000 legacy, she is entitled to no exemption and becomes subject to a tax of 7% on the full $1,000, or $70.00.

Likewise, May C. Hogan, when taxed as a child and without applying the 1941 amendment, is entitled to a $10,000.00 exemption provided for beneficiaries under Class A, and on the overplus of her succession is taxed at the gentler, graduated rates provided for beneficiaries under Class A beginning at 2% and rising, in her case, to a maximum of 7%, making her total tax, as has been seen, the sum of $1,268.48.

But the varying exemptions for the different beneficiaries in section 15 (b), c. 85, '35 C.S.A. of the act are not the exemptions which are discussed in *People ex rel. v. Estate of Waterman, supra.* In that case this court had before it a *total* exemption from all inheritance tax provided in section 15 (a), c. 85, '35 C.S.A. of the act in favor of religious, educational and charitable institutions. The question before this court in that case was whether the University of Vermont, as the principal beneficiary in the Waterman estate, had such a vested interest in an exemption under a statute in force at the time of the death of the testator, that a law removing the exemption, passed subsequent to testator's death but before distribution of his estate, would be invalid. It was in resolving that case in favor of the Inheritance Tax Commissioner and against the executor, that this court used the words that, "Exemptions are matters of grace and not of right" and hence there could be no vested interest acquired in an exemption. We do not believe the Attorney General can successfully rely upon that case as a complete justification for the trial court's action in the instant case. In the Waterman case the exemption involved was a total exemption to a religious, educational and charitable institution, and the sole question was whether the new act, passed after the death of the testator, was applicable. Here the basic question is not

a claim of vested interest by reason of exemption. This matter does not involve a total exemption but a qualified one pertaining to beneficiaries who, above the amount exempted or excluded, are definitely taxable. It is true that by placing those beneficiaries adopted after reaching their majority in Class D, instead of in Class A, the amendment lowers the amount of their exemption; but the basic fact in the instant case is that the greatest change in the amount of tax levied against May C. Hogan comes from the higher graduated rates used in assessing beneficiaries in Class D, in comparison with the rates used in Class A; so that of the total of the $129,843.96 share of the estate to which she is entitled, $104,843.96 is taxed at the maximum stranger's rate of 14% provided in Class D. It is this shifting of the beneficiary from the gentler rates provided in Class A to the stiffer rates provided in Class D that seems to have been ignored in the proceedings before the trial court and which brings this case outside the factual area existing in the Waterman case, supra.

In *Magoun v. Illinois Trust & Savings Bank*, 170 U.S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037, it was held that the Illinois inheritance tax classification does not deny the equal protection of the laws when the first and second classes are based respectively on the lineal and collateral relationship to the testator or intestate, and the third is composed of strangers to the blood and distant relatives, and when the latter is again divided into subclasses dependent upon the amount received. Had the validity of our Colorado inheritance tax law been attacked prior to the 1941 amendment, as denying those taxed the equal protection of the laws, we are of the opinion that the Magoun case could be aptly cited in support of the proposition that there was no infringement of section 1 of the Fourteenth Amendment to the United States Constitution. The Colorado inheritance tax law had a structure very similar to that of the Illinois law that was under attack. It sets up four classifications of relation-

ship from the closest, as set forth in Class A, to complete strangers, as set forth in Class D, and at the same time provides a graduated scale of taxation so that each recipient's tax is dependent not only upon his relationship to the deceased but also upon the amount of the succession. In the Magoun case the court used the expression: "And if the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law operates 'equally and uniformly upon all persons in similar circumstances.'" The court further said: "If there is unsoundness it must be in the classification. The members of each class are treated alike, that is to say, all who inherit $10,000 are treated alike—all who inherit any other sum are treated alike. There is equality, therefore, within the classes. If there is inequality it must be because the members of a class are arbitrarily made such and burdened as such upon no distinctions justifying it."

The court quoted with approval Mr. Justice Brewer's statement in *Gulf, Colorado & Santa Fe Ry. v. Ellis,* 165 U.S. 150, 165: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification — and is not a mere arbitrary selection."

It is to be observed that there is here involved a classification within a classification. Although that fact does not of itself make it subject to the constitutional inhibition (*Renwick v. Martin,* 126 N. J. Eq. 564, 10 A. (2d) 293) it does call for scrutiny as to whether the subclassification has become so narrow as to make it special legislation. In *Carter v. State Tax Commission,* 98 Utah 96, 96 P. (2d) 727, 126 A.L.R. 1402, a discrimination be-

tween members of an already existing class was held unlawful.

A law taxing the right of succession of natural born children under the age of twenty-one under Class A and taxing all natural born children over the age of twenty-one as strangers under Class D would, in our judgment, be discriminatory and not afford a fair basis for difference in classification. We are inclined to think that there is a similar discrimination presented in the instant case relative to adopted children, without more facts shown than are here presented. In fact, the record discloses a paucity of facts supporting the 1941 amendment. Plaintiffs in error, in arguing the unconstitutionality of a provision predicated upon the age at which the decree of adoption is entered, also allege that it would separate into a class to be thus discriminated against not more than a half dozen persons in each decade. We find no denial in the Attorney General's brief of this allegation.

It also appears from the record that Margery A. Hogan, recipient of a $1,000 legacy under the will, escapes paying any tax by virtue of being a mutually acknowledged child and is thereby entitled to a $2,000 exemption under Class B; whereas Irene G. Slocum, as disclosed by affidavit, also was a mutually acknowledged child before she reached her fifteenth birthday but, having been legally adopted after she was twenty-one, now is taxed as a stranger.

In a strict sense this amendment does not change the law of descent and distribution. The adopted child, since the passage of the amendment, still inherits from his or her adoptive parent; but the child adopted after becoming an adult has a much less valuable inheritance than the child adopted while a minor, and, as inheritance taxes become more severe, the right to inherit as a child and then be taxed as a stranger becomes a rather empty privilege—another case of preserving the form but losing the substance.

In view of what we have heretofore said, it is unneces-

sary to discuss the third specification of error, namely, that the court erred in not finding and decreeing that section 1, renumbered section 2, of House Bill No. 399, was not passed in the mode prescribed by the Constitution of the State of Colorado. This specification relates to the manner in which the bill containing the amendment in question was enacted in the two houses of the legislature. There is no need to determine whether the procedure followed was proper, inasmuch as our objection to the amendment involves the more fundamental questions presented in the two specifications already discussed.

In reversing the judgment of the trial court, we again emphasize that we do so on the record appearing in this particular case which, in our opinion, fails to disclose a sufficient basis for the subclassification attempted to be made by the amendment. There is no showing, either in the record or in the argument in the briefs, that the classification is founded upon a reasonable distinction. *Kirschner v. McCracken,* 180 Okla. 223, 68 P. (2d) 793. We do not say categorically that such a classification would not be justified under any circumstances or that a legislative study and declaration of policy based on that study might not, at some future time, justify the classification here attempted. What we do say is that it does not seem to be justified by the record in the present case.

Therefore, for the reasons set forth, the judgment is reversed.

Mr. Justice Stone and Mr. Justice Alter dissent.