UNITED STATES of America,

v.

Joseph MASSINO, Defendant.

No. CR–02–307 (NGG).

United States District Court,
E.D. New York.

June 1, 2004.

See. also, 311 F.Supp.2d 316.

Greg D. Andres, Jim Walden, United States Attorney's Office, Criminal Division, Brooklyn, NY, for Plaintiff.

David Breitbart, David Breitbart, Attorney at Law, David Stern, Rothman, Schneider, Soloway & Stern, P.C., Flora Edwards, Attorney At Law, Diarmuid White, White & White, Mathew J. Mari, Scott E. Leemon, Offices of Scott E. Leemon, New York City, for Defendant.

### MEMORANDUM and ORDER

GARAUFIS, District Judge.

In this criminal action, the United States of America ("government") has alleged that Joseph Massino ("defendant") and a number of other individuals violated and conspired to violate the Racketeer Influenced and Corrupt Organization ("RICO") statute and that they committed other criminal acts. *See* 18 U.S.C. § 1961, *et seq.* All other defendants in the instant indictment have entered guilty pleas leaving defendant Massino to stand trial. The RICO charges include predicate acts of murder, attempted murder, loansharking, arson, illegal gambling, and extortion. The defendant is also charged with a number of substantive crimes, including loansharking, illegal gambling, extortion, and money laundering. The government has moved *in limine* "to admit evidence pertaining to the witnesses' cooperation against persons other than the defendant if defense counsel suggests that the [cooperating] witnesses have falsely testified

about Massino in order to receive a sentence reduction." Gov't Br. at 62–63. The government has stated that this rehabilitative questioning would include soliciting information from cooperating witnesses relating to (1) the number of individuals against whom the cooperating witness has provided incriminating information and/or (2) the number of the incriminated individuals against whom charges have been filed and/or convictions obtained. The defendant only opposes this motion to the extent that the government seeks to introduce evidence of co-defendants' guilty pleas. For the reasons discussed below, the government's motion is denied with respect to evidence of co-defendants' guilty pleas.

## I. FACTUAL BACKGROUND

The instant indictment (which has been superseded twenty times) alleges that the defendant and thirty other co-defendants engaged in a variety of criminal acts. The defendant is alleged to be the boss of a RICO enterprise known as the Bonanno crime family. See CR–02–307 S–20 at 1, 4. This crime family is alleged to be "part of a nationwide criminal organization known by various names, including the 'mafia' and 'La Cosa Nostra.'" Id. at 3. The defendant is alleged to have overseen the illegal activities of Bonanno crime family underboss, consiglieri, captains, soldiers, and associates. Id. at 1–4. In its opening statement, the government stated that it would prove that the defendant rose to power in the Bonanno crime family through a pattern of threatening and violent conduct that included the murder of a

number of rival members of the Bonanno family. The government also stated that the defendant or his subordinates were aware of all criminal conduct undertaken by the family's members and associates and that the defendant received portions of the proceeds derived from this criminal activity.

In this indictment, thirty members and associates of the Bonanno crime family have been charged as co-defendants with a wide variety of criminal conduct including RICO, RICO conspiracy, murder, illegal gambling, and conspiracy to distribute marijuana.[1] All thirty other co-defendants pleaded guilty before this court or a magistrate judge in this district. Only the defendant has asserted that he is not guilty of any of the crimes charged in the instant indictment.

## II. DISCUSSION

The government argues that, in United States v. Martinez, 775 F.2d 31 (2d Cir.1985), the Second Circuit held that the fact that other individuals against whom a cooperating witness testified had pleaded guilty was admissible for the purposes of rehabilitation. Id. at 36–38. (holding that Fed.R.Evid. 801(c) and 803 permitted the prosecution to ask a cooperating witness who the witness had provided information about and whether those individuals pleaded guilty); see also United States v. Lindemann, 85 F.3d 1232, 1243–44 (7th Cir. 1996) (holding that the prosecution was properly permitted to ask a cooperating witness who, other than the defendant, the witness had provided information against

---

1. There are also two multi-defendant cases that have been related to the instant case. See United States v. Massino CR–03–929 (NGG), United States v. Urso, CR–03–1382 (NGG). A grand jury indicted seven defendants in the former case, and either the same or another grand jury indicted twenty-eight defendants in the latter case. These two

cases also include allegations related to the Bonanno crime family. When all three cases are considered together, there are more than fifty criminal defendants in the Bonanno crime family indictments. Many of these defendants already have pleaded guilty, some of whom also have entered into cooperation agreements with the government.

and whether those other individuals had pleaded guilty). In *Martinez,* the Second Circuit reasoned as follows in permitting guilty pleas by Metropolitan Correction Center (MCC) guards to be admitted in a case in which a cooperating witness, McNeil, had also provided information about the MCC guards:

> The issue at Martinez's trial was not whether the MCC guards were guilty; it was, rather, whether McNeil was a witness whose testimony was worthy of belief or whether, instead, he typically fabricated the wrongdoings with which he charged others and had fabricated the story against Martinez in hope of gaining a reduction of his own sentence. Whether or not each of the guards was in fact guilty of the offenses charged, McNeil's credibility was supported by the very fact that all of those MCC guards chose to plead guilty rather than to stand trial. Thus, the guilty pleas were admitted in evidence not to prove the fact of their utterance. The pleas therefore were not hearsay ...

*Martinez,* 775 F.2d at 37.

The defendant responds by arguing that *Martinez* was nullified by the Supreme Court's recent decision in *Crawford v. Washington,* — U.S. —, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which overturned the Supreme Court's decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *Roberts,* the Supreme Court had held that the Sixth Amendment's Confrontation Clause permits a hearsay statement to be admitted where the declarant is unavailable only if the statement bears an adequate "indicia of reliability." *Id.* at 62–66, 100 S.Ct. 2531. Such a statement was presumed to have indicia of reliability when it fell within a firmly rooted hearsay exception, but otherwise the hearsay was inadmissible absent a showing of particularized guarantees of trustworthiness. *Id.* In *Crawford,* the Supreme Court overturned *Roberts* and held that a defendant has a Sixth Amendment right to confront any "testimonial statement," irrespective of whether the statement was accompanied by indicia of reliability. *Crawford,* — U.S. at — – —, 124 S.Ct. at 1359–74. The Court stated that "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with a jury trial because a defendant is obviously guilty." *Crawford,* — U.S. at —, 124 S.Ct. at 1371. In *Martinez,* the Second Circuit merely determined that admitting a coconspirator's guilty plea was not hearsay. Under *Roberts,* the hearsay determination was dispositive of the Confrontation Clause issue. After *Crawford,* however, in order to determine whether admission of a guilty plea violates the defendant's rights under the Confrontation Clause, this court must determine whether a guilty plea is "testimonial."

*Crawford* addresses at length the definition of a "testimonial statement," but lower courts like this one will have to apply *Crawford* to a variety of evidence before there can be any certainty. "Testimony" is "typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford,* — U.S. at —, 124 S.Ct. at 1364 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). The "core" concept of testimony is that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 1364. The Court cited Justice Thomas' opinion in *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), as one formulation of "testimony:" "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confes-

sions." After conducting substantial independent research, it appears that neither the Second Circuit nor any other court has had an opportunity to apply *Crawford* in the context of the use of co-defendants' guilty pleas to rehabilitate a cooperating witness' testimony. The defendant argues that co-defendants' guilty pleas are themselves "testimonial" within the meaning of *Crawford*. The government virtually concedes, and one court has already held that plea allocutions are, in fact, "testimonial" under *Crawford*. *See People v. Carrieri*, 778 N.Y.S.2d 854, 2004 WL 877564 (2004). The defendant argues that a plea, even without a full allocution, is essentially a confession to the authorities in which a defendant acknowledges his own illegal acts. 5/24/04 Letter of Flora Edwards at 4. The government argues that evidence that a guilty plea has been made is not testimonial because a plea is a fact, and nothing else. The government argues that this fact is no different from the fact that other defendants were arrested as a result of the information provided by the cooperating witness. The fact that other defendants were arrested is routinely admitted. The pleas are not being offered as evidence that the defendant on trial engaged in particular conduct, but instead that other defendants named in the instant or related indictments pleaded guilty because they believed a cooperating witness' testimony was credible. *See Martinez*, 775 F.2d at 37. The government argues that any prejudice that would result to the defendant could be cured by a limiting instruction.

I find that guilty pleas are "testimonial" within the meaning of *Crawford*. First, a plea is precisely the kind of formalized confession that constitutes quintessentially "testimonial" material under *Crawford*. *Crawford* explicitly included affidavits, depositions, and confessions within the core definition of "testimonial"

statements. *Crawford*, ⸺ U.S. at ⸺, 124 S.Ct. at 1364 (citing *White*, 502 U.S. at 365, 112 S.Ct. 736 (Thomas, *J.*)). Much like an affidavit, deposition, confession, or prior testimony, a guilty plea provides substantial information about the accused's criminal conduct: a guilty plea is an acknowledgment that a defendant committed certain criminal acts. The defendant is correct when he argues that a guilty plea is, at its heart, a *confession* by an accused that he or she (1) committed specific criminal acts, (2) possessed the requisite criminal intent, and (3) caused the results embodied in the elements of the charge.

Second, when "testimony" is considered in functional terms, guilty pleas clearly qualify as testimonial. The *Crawford* Court stated that one "formulation[ ] of this core class of testimonial statements" is "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, ⸺ U.S. at ⸺, 124 S.Ct. at 1364. After all, this functional definition of testimonial statements is consistent with the historical concerns motivating the adoption of the Confrontation Clause: "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 1363. The *Crawford* Court concluded that the Confrontation Clause expresses a rejection of the civil law system in which government officials often seek truth by conducting *ex parte* interviews of witnesses, in favor of the adoption of an adversarial criminal justice system. Most forms of testimony—such as affidavits, depositions, and prior testimony—are reliable because they are sworn and, in a few, relatively isolated cases, the declarant *may*

face prison or other criminal penalties for lying. Guilty pleas are inherently more reliable than these other forms of testimonial statements discussed in *Crawford* because criminal penalties are *certain* to follow. Where a jury is likely to find an out-of-court statement inherently reliable, the cost of denying the accused an opportunity to confront the declarant is greatest.

Third, a guilty plea is testimonial within the meaning of *Crawford* because it embodies an allocution. In order for there to be a guilty plea, there must be both an allocution and a judicial finding that the allocution is valid and sufficient. *See* Fed R.Crim. P. 11(1)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). The allocution contains a confession to all of the required elements of the crime. As a result, the allocution is implicit in the guilty plea, and the guilty plea qualifies as "testimonial" under *Crawford*.

The government argues that the guilty plea is merely a fact that contains absolutely no statement that could be deemed "testimonial." Under this reasoning, the fact that someone pleaded guilty is being introduced merely for the purpose of rehabilitating the credibility of the cooperating witness. In *Martinez*, the Second Circuit stated that the cooperating witness' "credibility was supported by the very *fact* that [the co-defendants] chose to plead guilty rather than to stand trial. Thus the guilty pleas were admitted in evidence not to prove the fact of their utterance." *Martinez*, 775 F.2d at 37 (emphasis added). After *Crawford*, the right to confrontation does not depend on whether a particular statement is being admitted for the truth of the matter asserted; the right to confrontation depends solely upon the nature of the statement sought to be admitted. As a result, after *Crawford* the law does not distinguish the *fact* that a guilty plea was made from the *confessional* or *testimonial* statement embodied in the guilty plea. A guilty plea cannot and does not exist apart from the statement "I plead guilty" or the associated allocution to all of the elements of the crime to which the co-defendant is pleading guilty. The *fact* that a co-defendant pleaded guilty is only significant because of its confessional nature. In this context, to the extent that the guilty plea resulted from the information provided by the cooperating witness, the *fact* that a co-defendant pleaded guilty is significant because it indicates the co-defendant believed that a judge and a jury would find the testimony of the cooperating witness credible.[2] This belief on the part of the co-defendant is an insight into the co-defendant's mind that only became possible because the co-defendant uttered the words "I plead guilty" and provided a corresponding allocution. As a result, the *fact* that an individual pleaded guilty necessarily embodies the testimonial statement made by an individual at the time he made the plea.

Further, even if guilty pleas are not inherently "testimonial" within the mean-

---

**2.** In certain cases, a co-defendant's guilty plea may also indicate that the government did not seek information about a single defendant from the cooperating witness, but instead sought information about a number of different suspects, thus dispelling any suggestion that the government and the cooperating witness conspired to target the defendant specifically. If this is the only purpose for which the government seeks to admit the guilty plea, the government has alternatives that are less constitutionally problematic available to it: the government may ask the cooperating witness or a case agent against how many other individuals the cooperating witness provided information; the government may also ask the case agent how many other individuals have been charged on the basis of the information provided by the cooperating witness.

ing of the Sixth Amendment, the guilty pleas are clearly testimonial in this case. The defendant is alleged to be the boss of the Bonanno crime family, whose members and associates, in turn, are alleged to have committed a variety of crimes ranging from arson to extortion to murder. The defendant is alleged to have been aware of or approved of all of this conduct either personally or through captains and soldiers who served as his agents. Further, the defendant is alleged to have received proceeds of the profits from much if not all of this criminal conduct. Each of the other thirty co-defendants charged in this indictment pleaded guilty to at least one of the charges against him. Given the fact that the defendant is alleged to be the boss of a complex and vast RICO enterprise, there can be no question that even the mere fact that his thirty co-defendants pleaded guilty provides substantial confessional evidence that, at the very least, the co-defendants participated in criminal aspects of this enterprise. In this case, the allegation that the defendant was the boss of an organized crime family is so inherently intertwined with the illegal conduct of its members and associates that the mere admission of guilt of one of these members and associates provides crucial testimonial evidence against the defendant within the meaning of *Crawford* and the Sixth Amendment.[3]

Finally, even if this court were to find that the mere fact that a co-defendant pleaded guilty to a related, similar or identical charge was not testimonial under *Crawford,* this court would find the guilty plea evidence to be inadmissible under Fed.R.Evid. 403, as it is substantially more prejudicial than probative. Again, given the inherently interrelated nature of the charges, there is an enormous risk that the jury, despite a limiting instruction, would find the fact that co-defendants pleaded guilty to be probative of the defendant's culpability for the instant charges. Further, the reality is that all thirty co-defendants pleaded guilty. This is not a case where some defendants pleaded guilty and others did not. This is a case where thirty co-defendants have almost unanimously decided to admit their guilt in aspects of an enterprise of which the defendant is alleged to be the chief executive officer. The sheer volume of the guilty pleas is highly prejudicial.

The guilty pleas are not particularly probative, either. Certainly, as the Second Circuit indicated in *Martinez,* the fact that an individual against whom a cooperating witness provided information pleaded guilty may be probative of the fact that the individual who pleaded guilty believed the witness to be credible. *Martinez,* 775 F.2d at 37. There is no evidence in the record, however, that would allow this court to conclude that the co-defendants pleaded guilty exclusively, primarily, or substantially as a result of the government's cooperating witnesses' testimony. The information provided by a cooperating

---

**3.** Theoretically, the government could introduce evidence of guilty pleas of co-defendants if the government could guarantee that the co-defendants whose pleas were introduced were made available to the defendant for cross-examination. After all, because the co-defendants have pleaded guilty, they no longer have a Fifth Amendment right against self-incrimination with respect to the charges to which the co-defendants pleaded guilty. This solution remains theoretical because there is never a guarantee that the co-defendant actually would be willing to be cross-examined. *See e.g., Somers v. Maryland,* 156 Md.App. 279, 846 A.2d 1065, 1070–71 (2004) (co-defendant who had pleaded guilty to participating in a robbery in which the defendant was alleged to have participated refused to testify despite the fact that the court instructed the defendant that he had no Fifth Amendment right against self-incrimination with respect to the charge to which he had pleaded guilty).

witness may have played little or no role in the co-defendants' decision to plead guilty. Further, in the instant case, the government has a variety of alternative means of rehabilitating its cooperating witnesses' credibility. The government can use non-testimonial video and audio tape recordings, photographs, and the testimony of others (other cooperating witnesses or any of the alleged victims of the defendant's criminal enterprise) in order to rehabilitate its witnesses. The government may also solicit evidence about which other individuals the cooperating witnesses have provided information and whether or not charges have been filed against those individuals.

## III. CONCLUSION

For the reasons discussed above, the government's motion *in limine* requesting that the government be permitted to place co-defendants' guilty pleas in evidence as a means of rehabilitating cooperating witness' testimony is DENIED.

SO ORDERED.