**E.I. DU PONT DE NEMOURS & COMPANY, Petitioner–Appellee,**

and

**Colorado State Board of Assessment Appeals, Appellee,**

v.

**DOUGLAS COUNTY BOARD OF EQUALIZATION, Respondent–Appellant.**

No. 02CA0308.

Colorado Court of Appeals, Div. II.

Jan. 2, 2003.

Certiorari Denied Aug. 25, 2003.

Oreck, Bradley, Crighton, Adams & Chase, LLC, Nicole Crighton, John L. Bordes, Jr., Adam W. Chase, Boulder, Colorado, for Petitioner–Appellee.

No Appearance for Appellee.

J. Mark Hannen, County Attorney, Lance J. Ingalls, Assistant County Attorney, Castle Rock, Colorado; Light, Harrington & Dawes, P.C., Steve J. Dawes, Denver, Colorado, for Respondent–Appellant.

Opinion by Justice ERICKSON.*

Pursuant to § 24–4–106(7), C.R.S.2002, the Douglas County Board of Equalization (county) appeals the Colorado State Board of Assessment Appeals' (BAA) 2001 ad valorem tax valuation of real property owned by E.I. Du Pont De Nemours & Company (DuPont). We affirm.

The county filed a timely notice of appeal to review the BAA order. DuPont moved to dismiss the appeal, asserting that the county's failure to include the BAA as a party created a jurisdictional defect that required dismissal. We issued a rule to show cause. Without objection by DuPont, we permitted the county to add the BAA as a party and discharged the rule to show cause. *See Colorado Interstate Gas Co. v. Property Tax Administrator*, 28 P.3d 958, 959–60 (Colo. App.2000). Because the jurisdictional defect has been resolved, we now address the assessment issues on the merits.

The county determined the market value of DuPont's property on January 1, 2001, to be $2,000,386. DuPont's experts claimed that the market value on the same date was $315,000. The BAA resolved the dispute in favor of DuPont.

The DuPont property consists of 849.713 acres adjacent to the town of Louviers, Colorado. It was used by DuPont to manufacture explosives such as detraprime, dynamite, nitroglycerine, and emulsion-type blasting agents from 1908 until 1989. The manufacturing operation contaminated portions of the property and resulted in the entry of a "Compliance Order on Consent" by the Colorado Department of Public Health and Environment, Hazardous Materials and Waste Management Division on September 4, 1998. The compliance order requires that DuPont clean and remediate the property and is a factor to be considered in determining value for tax assessment purposes until the remediation is complete and the conditions in the order are met. Evidence produced at the hearing established the extent of contamination and showed that the environmental remediation will cost between $4 million and $32 million. Remediation procedures have commenced, but will not be completed for many years.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

## I.

■ The issue in this case is whether the county's assessment of $2,000,386 or the BAA's assessment of $315,000 conforms to Colorado's constitutional and statutory requirements. The parties concede that the issue is one of first impression. We find no reversible error in the BAA assessment.

The BAA decision reviews both the facts and the law supporting its $315,000 assessment of the DuPont property for ad valorem tax purposes in 2001.

■ Our review of the BAA's decision involves a mixed issue of law and fact. *See* § 24–4–106(7). Matters of law are reviewed de novo. *See City of Longmont v. Henry–Hobbs*, 50 P.3d 906, 908 (Colo.2002).

The Colorado constitution requires that property be assessed on its "actual value" based on the "appropriate consideration of cost approach, market approach, and income approach to appraisal." Colo. Const. art. X, § 3(1)(a).

The Colorado statutes require "just and equalized" current valuations "to the extent which is equitably and practically possible." Section 39–1–104(11)(a)(II), C.R.S.2002.

Here, the three methods for valuation do not provide a clear basis for determining the actual value of the DuPont property without adjustments to address the governmental order for remediation. Both parties agree that, in an uncontaminated condition, the land would be worth between $2400 and $2600 per acre.

### A.

The market value approach does not assist us because the property is contaminated, and there are no comparable sales.

The compliance order permits assignment or transfer, but imposes the irrevocable obligation on DuPont to restore the Colorado property to a clean condition and to remove the contamination from it. Any sale of the property in its current condition would require a reduction in price to accommodate loss of use of the property and the continuing controversy tied to remediation activities.

### B.

The county applied the cost approach in its initial assessment of the property. It added the value of the existing structures on the property to the value of the land. The land value was based on the cost of the land in a clean condition, reduced by 30%, which resulted in the county's appraisal of $2,000,386.

The county's valuation based on costs adjustments relies heavily on the market value approach to determine land value. The adjustments made to permit a comparable sales analysis are, at best, speculative.

The 30% reduction was based on the sum of three separate deductions. First, 5% was deducted for the land that was rendered completely unusable. The county, however, also determined that an additional 470 acres, or 55%, of the property was also contaminated to a lesser degree, but made no adjustment for the contamination.

The county considered a sale where a contaminated former manufacturing site sold at 10% below market value after remediation. The county discounted 10% for the "stigma" associated with the property. The record, however, indicates that the purchaser of that property was required "to do some special foundation work" to use the property as a retail store. While it is not entirely clear why this foundation work was necessary, a possible inference is that the work was required so as to not disturb the remediation. Despite the county's argument, there is no evidence in the record that 10% will compensate the owner for the stigma attached to the formerly contaminated land.

Finally, 15% was deducted for the usable land that would be occupied as part of the remediation effort. This deduction was based on the county's observation of the site, and not on any fixed standard.

### C.

DuPont's valuation of the property was based upon the market and income approaches. DuPont asserts that there is no real market for former explosives plants and their land and that the current, partial lease

of the property is below market value for normal leases.

DuPont, as part of the consent order, has obtained estimates of the cost to remediate the contaminated property. The low estimate of approximately $4 million, reduced to its present value over 10 years, is approximately $2.8 million. Deducting that amount from the remediated value of the land produces a negative value.

To arrive at a positive value for the property, DuPont looked to the current earnings and a nominal value for the remainder of the property as grazing land. DuPont's experts thus appraised the property at $315,000.

The BAA accepted the opinion of DuPont's experts and held that it was proper to deduct the part of the cost of remediation from the value of the land in its uncontaminated state.

## II.

The question of whether the cost to cure, when mandated by a governmental entity, should be deducted from the valuation of the property for ad valorem tax purposes has not been determined by Colorado courts. In *Lawrence v. Board of Equalization*, 989 P.2d 232 (Colo.App.1999), a panel of this court approved a tax valuation deducting the cost to cure a contaminated well serving the taxpayers' property. However, the remediation of the well was not then mandated by a governmental order, but could have been at a later time.

The county relies on a New Jersey case that does not permit a cost to cure or remediate deduction. In *Inmar Associates, Inc. v. Borough of Carlstadt*, 112 N.J. 593, 549 A.2d 38 (1988), the owner had an obligation under the New Jersey Environmental Cleanup Responsibility Act, N.J. Stat. Ann. § 13:1K–6 to –14, to remediate property that was contaminated with tar from a prior hot tar manufacturing operation. The New Jersey court stated that it was the owners' obligation not to contaminate the property, but to remediate the contamination when, or after, it occurred. Thus, cost to cure was not deemed a basis for determining or reducing the value of the property.

In affirming the BAA's order, we conclude that the deduction of costs to cure required by governmental remediation order represents the better approach to determine the actual value of a parcel when it is clear that, even by conservative estimates, the cost of remediation is greater than the value of the property if it were in a clean condition. Our analysis is supported by the General Assembly's instructions to assess the actual value with an eye toward minimizing costs, *see* § 39–1–104(11)(a)(II), and by the California court's decision in *Mola Development Corp. v. Orange County Assessment Appeals Board,* 80 Cal.App.4th 309, 95 Cal.Rptr.2d 546 (2000).

The BAA's assessment is supported by competent evidence. *See Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146, 151 (Colo.1988); *see also* § 24–4–106(7). It is unreasonable to assume that any buyer would be willing to purchase DuPont's property and assume the cost of restoration activities to a clean condition, given the eight-fold difference between the high and low estimates of cost of remediation. Moreover, the governmental remediation order imposes an irrevocable obligation on DuPont to complete the remediation. Accordingly, we agree with the BAA that the DuPont property is for all practical purposes valueless at this time. As remediation continues, and the costs to cure become more definite, the land may eventually become salable again.

The assessment analysis and order of the BAA best satisfies the requirements of § 39–1–104(11)(a)(II) under the facts of this case.

The order of the Board of Assessment Appeals is affirmed.

Chief Judge HUME and Judge ROY concur.