The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Stephanie L. **COUILLARD,** Defendant–Appellant.

No. 03CA1747.

Colorado Court of Appeals, Div. II.

Sept. 22, 2005.

Rehearing Denied Nov. 23, 2005.

John W. Suthers, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Virginia Richardson Yee, Boulder, Colorado, for Defendant–Appellant.

VOGT, J.

Defendant, Stephanie L. Couillard, appeals the judgment of conviction entered on a jury verdict finding her guilty of accessory to attempted first degree murder. We reverse and remand for a new trial.

In July 2002, a shooting took place at the home of defendant's boyfriend. Defendant and her boyfriend were not present at the time, but later returned to the house and were questioned by the police.

Two days after the shooting, a warrant was issued for the arrest of the boyfriend's cousin, who also lived at the house, on charges of attempted first degree murder. Late that night, the police tracked the cousin to a hotel and were preparing to arrest him when they saw him leave the hotel and jump into a car driven by defendant.

Several marked and unmarked police vehicles pursued the car as it drove through a residential neighborhood, in excess of the speed limit and in a manner described by one of the officers as "aggressive and . . . an attempt to evade contact."

When the car came to a stop in the middle of an intersection, the cousin attempted to flee on foot. Defendant remained behind the wheel and did not respond to the police until an officer reached into the car, turned it off, and removed her from it.

Defendant was arrested, transported to the police station, and advised of her rights. After waiving her rights, she told the police that she had come to the hotel at the cousin's request, that she "knew why [the cousin] was there," that the cousin had directed her to pick him up at the back door of the hotel, and that he had told her to drive fast because the police were following them. She also stated that she had been told by a person present at the shooting that the cousin had shot the victim.

Defendant was charged with one count of being an accessory to attempted murder. The jury found her guilty of the charged offense and not guilty of the lesser nonincluded offense of eluding a police officer.

I.

Defendant contends that the statements she made to police officers after her arrest were the fruit of an unlawful arrest, and that the trial court therefore erred in denying her motion to suppress. We disagree.

■ A suppression ruling presents a mixed question of law and fact. *People v. Medina,* 25 P.3d 1216 (Colo.2001).

■ When we review a trial court's suppression ruling, we defer to its findings of historical fact if they are supported by competent evidence. However, we review the court's conclusions of law de novo, assessing whether it applied the correct legal standard and whether the totality of the circumstances supports its ultimate legal conclusion regarding the suppression issues. *See People v. Garcia,* 11 P.3d 449 (Colo.2000); *People v. Rushdoony,* 97 P.3d 338 (Colo.App.2004).

■ "Probable cause to arrest exists when, under the totality of the circumstances at the time of arrest, the objective facts and circumstances available to a reasonably cautious officer at the time of arrest justify the belief that (1) an offense has been or is being committed (2) by the person arrested." *People v. King,* 16 P.3d 807, 813 (Colo.2001).

■ The quantum and quality of information necessary to support a finding of probable cause are significantly less than that required to prove an accused's guilt at trial. *People v. Rogers,* 68 P.3d 486 (Colo.App. 2002).

■ In its suppression ruling here, the trial court reviewed the legal standard for determining probable cause and concluded that the facts and circumstances known to the officers when they arrested defendant would allow a reasonably cautious officer to believe defendant was eluding the police or assisting a wanted suspect to avoid apprehension.

The facts upon which the trial court relied are supported by evidence adduced at the hearing, and those facts in turn amply support the court's conclusion that the police had

probable cause to arrest defendant. The police had a warrant to arrest defendant's passenger, and one of the officers involved in the pursuit of defendant's car had interviewed defendant after the shooting and knew of her connection with the suspect. The police saw defendant drive away from the hotel with the suspect in her car and proceed at relatively high speeds in a circuitous route through the neighborhood, pursued by numerous police vehicles and not coming to a full stop until physically restrained by an officer.

We agree with the trial court that, on these facts, a reasonably cautious officer would be justified in believing that, at a minimum, defendant was committing the crime of eluding a police officer. The fact that the jury later acquitted defendant of eluding does not require a conclusion that the police lacked probable cause to arrest her on that charge. *See People v. Rogers, supra.*

Because the trial court applied the correct legal standard and the totality of the circumstances supports its ultimate legal conclusion regarding the existence of probable cause, we may not disturb its suppression ruling. *See People v. Garcia, supra.*

## II.

Defendant contends the term "suspected of" in the accessory statute is unconstitutionally vague as applied in her case. Again, we disagree.

Section 18–8–105(1), C.R.S.2005, states: "A person is an accessory to crime if, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of another for the commission of a crime, he renders assistance to such person." Defendant was charged under subsection (4) of the accessory statute, which states: "Being an accessory to crime is a class 5 felony if the offender knows that the person being assisted is *suspected of* or wanted for a crime, and if that crime is designated by this code as a class 1 or class 2 felony." Section 18–8–105(4), C.R.S.2005 (emphasis supplied).

Before trial, defendant moved to strike the "suspected of" language from the charge and

from the elemental jury instruction on the ground that the phrase was vague and overbroad. The prosecutor responded that defendant was improperly attempting to have a statute found unconstitutional without having given notice to the attorney general, and that the challenged language was neither vague nor overbroad. The trial court denied defendant's motion.

### A.

As an initial matter, we reject the People's contention that denial of the motion was proper because defendant did not give notice to the attorney general.

██ The People acknowledge that such notice is required by statute and rule only in civil declaratory judgment proceedings when a statute, ordinance, or franchise is alleged to be unconstitutional. *See* § 13–51–115, C.R.S. 2005; C.R.C.P. 57(j). They argue, however, that it makes sense "as a matter of policy" to require notice to the attorney general whenever the constitutionality of a statute is challenged, including during the course of criminal proceedings. We conclude that whether public policy mandates creation of such a requirement is an issue better addressed by the General Assembly. *See Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 38 (Colo.2000)("[C]ourts must avoid making decisions that are intrinsically legislative. It is not up to the court to make policy or to weigh policy.").

### B.

We do not agree with defendant that "suspected of" in the accessory statute is unconstitutionally vague as applied here.

██ A statute is presumed to be constitutional, and the burden is on the party challenging the statute to prove unconstitutionality beyond a reasonable doubt. *People v. Vasquez,* 84 P.3d 1019 (Colo.2004); *People v. Jackson,* 109 P.3d 1017 (Colo.App.2004).

██ A law violates due process and is void for vagueness where its prohibitions are not clearly defined. However, if persons of common intelligence can readily understand the meaning and application of a statute, the

statute is not void for vagueness. *See Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972); *People v. Perea,* 74 P.3d 326 (Colo.App.2002).

■ A statute is vague as applied if it does not, with sufficient clarity, prohibit the conduct against which it is to be enforced. A defendant may test a law for vagueness as applied only with respect to his or her particular conduct. If the statute is not vague as applied to the defendant, it will be enforced even though it may be vague as applied to the conduct of others. *City of Colorado Springs v. Blanche,* 761 P.2d 212 (Colo.1988); *People v. Summitt,* 104 P.3d 232 (Colo.App. 2004)(*cert. granted* Jan. 10, 2005).

■ Our supreme court has rejected vagueness challenges to prior versions of the accessory statute. In *Self v. People,* 167 Colo. 292, 299, 448 P.2d 619, 622 (1968), the court observed that the "accessory after the fact" statute addressed a kind of behavior that had been proscribed "since the early days of the English common law." It specifically rejected the contention that the phrase "charged with," in the statutory proscription against harboring and protecting a person charged with a crime, was vague as applied in the case before it. In *People v. Young,* 192 Colo. 65, 68, 555 P.2d 1160, 1162 (1976), the court rejected a nonspecific vagueness challenge to another predecessor of the current accessory statute, concluding that the statute "meets the accepted test in this jurisdiction by giving fair warning of the conduct forbidden. Men of common intelligence can readily comprehend the statute's meaning and application."

We perceive no grounds for reaching a contrary conclusion based on defendant's contention that the phrase "suspected of" is unconstitutionally vague. The term "suspected" is defined as "that one suspects or has a suspicion of: believed guilty, likely, or doubtful." *Webster's Third New International Dictionary* 2303 (1976). "Suspected of" can be readily understood by persons of common intelligence, and defendant does not allege that she does not understand the term.

Defendant likewise does not dispute that, in the context of this statute, persons of common intelligence would understand "suspected of" to mean "suspected of by law enforcement authorities." Rather, she argues that the phrase is unconstitutionally vague because it leaves the "level of suspicion" required to trigger the statute to the discretion of the police. However, regardless of the merits of that argument in other circumstances, it does not require a conclusion that the statute is vague as applied here. *See People v. Summitt, supra.* This is not a case in which the police had only a vague or minimal level of suspicion about the cousin. The jury found that defendant knew the cousin "was suspected of or was wanted for a crime," and there is no basis for concluding that its finding was based on any misapprehension of the level of suspicion required.

We thus conclude that the accessory statute is not unconstitutionally vague as applied to defendant.

### III.

Defendant next contends the trial court violated her confrontation rights under the United States and Colorado Constitutions by taking judicial notice of statements in the cousin's plea of guilty to attempted first degree murder and by admitting hearsay statements made by the shooting victim to a police officer. We agree.

The United States and Colorado Constitutions guarantee persons accused of crimes the right to confront the witnesses against them. *See* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *People v. Fry,* 92 P.3d 970 (Colo.2004).

■ In *Crawford,* the Supreme Court held that a nontestifying witness's out-of-court testimonial statement, regardless of its reliability, may be admitted against an accused only if the witness is unavailable and the accused had an opportunity to cross-examine the witness when the statement was made. *See also People v. Fry, supra; People v. Vigil,* 104 P.3d 258 (Colo.App.2004) (*cert. granted* Dec. 20, 2004).

■ As for out-of-court statements that are not testimonial, divisions of this court

have continued to apply the test set forth in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and *People v. Dement*, 661 P.2d 675 (Colo.1983), to determine whether admission of the statements violated the defendant's rights under our state constitution. *See People v. Compan*, 100 P.3d 533 (Colo.App.2004) (*cert. granted* Oct. 25, 2004); *see also People v. King*, 121 P.3d 234, 2005 WL 170727 (Colo.App. No. 02CA0201, Jan. 27, 2005); *People v. Vigil, supra.* Under *Roberts* and *Dement*, the prosecution must make a two-part showing to demonstrate compliance with the state constitution. First, the prosecution must either produce the declarant or show that she is unavailable for trial. Second, if the declarant is unavailable, the government may use the out-of-court statements only if they bear sufficient indicia of reliability. *People v. Compan, supra.*

### A.

■ At the beginning of the trial here, the prosecutor advised the court that he had intended to call the cousin as a witness to establish that. the cousin had committed attempted first degree murder—an element necessary to prove defendant's guilt as an accessory—but that the cousin was asserting his Fifth Amendment rights and thus would be unavailable to testify. Therefore, the prosecutor asked the court to take judicial notice of the cousin's petition to plead guilty, noting that the admission in that petition was admissible as a statement against the cousin's penal interest.

Defendant objected, arguing that taking judicial notice of the guilty plea would violate her right of confrontation. The court found the cousin unavailable and the statement reliable, and it therefore granted the motion. The court subsequently told the jury it was taking judicial notice of the fact that the cousin had admitted that he

> used a handgun to attempt to cause the death of [D.C.] and [M.M.]. And that he did so unlawfully after deliberation with the intent to cause the death of [D.C.] and [M.M.]. Those are the facts you may consider as proven evidence in this case.

The jury was given a written instruction stating: "A judicially noticed fact is one which the court determines is not subject to reasonable dispute, and which the court has accepted as being true. You may or may not accept this fact as true. You may weigh it as you would any other evidence."

The cousin's statement in his plea agreement was testimonial within the meaning of *Crawford.* The *Crawford* Court cited formal statements given in court proceedings, as well as extrajudicial statements contained in formalized testimonial materials, as examples of testimonial statements, and it specifically referenced a "plea allocution" as one of the "plainly testimonial statements" that had been admitted under the prior test despite the lack of any opportunity to cross-examine. *Crawford v. Washington, supra*, 541 U.S. at 64, 124 S.Ct. at 1372. After *Crawford*, other courts have held that plea allocutions are testimonial and thus inadmissible unless the defendant has had an opportunity to cross-examine the declarant. *See, e.g., United States v. McClain*, 377 F.3d 219 (2d Cir. 2004); *United States v. Massino*, 319 F.Supp.2d 295 (E.D.N.Y.2004); *People v. Woods*, 9 A.D.3d 293, 779 N.Y.S.2d 494 (2004).

It is undisputed that defendant had no opportunity to cross-examine the cousin. Therefore, under *Crawford*, the cousin's testimonial statement was inadmissible in defendant's trial.

### B.

■ Over defense objection, the prosecutor elicited testimony from a police officer that the shooting victim had stated, while riding in the ambulance on the way to the hospital, that the cousin had shot him. Later, when defense counsel learned that the shooting victim would not testify even though he had been endorsed as a witness by the prosecution, he argued that admission of the officer's testimony violated defendant's confrontation rights. The trial court declined to grant a mistrial. It concluded that the testimony was admissible as an excited utterance under CRE 803(2), and that the availability or unavailability of the witness was immaterial.

On appeal, the parties disagree as to whether the statements by the shooting victim to the police officer were testimonial. We need not decide the issue because we conclude that, under either *Crawford* or the *Roberts–Dement* test, the victim's statements were inadmissible.

First, it is undisputed that defendant did not have an opportunity to cross-examine the shooting victim. Therefore, if the statements are deemed testimonial, their admission violated defendant's confrontation rights under *Crawford.* Second, it is likewise undisputed that the prosecution made no showing of the victim's unavailability. Thus, under the *Roberts–Dement* test, the statements were inadmissible even if they were nontestimonial. *See People v. Compan, supra; cf. People v. King, supra* (no confrontation violation where declarant was unavailable and nontestimonial hearsay statements were admissible as excited utterances).

### C.

Having determined that admission of the challenged statements violated defendant's confrontation rights, we next consider whether the error requires reversal of defendant's conviction. We conclude that it does.

■■■■ Violation of a defendant's confrontation rights is a constitutional error that requires reversal unless the appellate court determines that the error was harmless beyond a reasonable doubt. The inquiry in a harmless error analysis is whether the guilty verdict actually rendered at trial was surely unattributable to the error. Thus, a reviewing court must look at the trial as a whole and decide whether there is a reasonable probability that the defendant could have been prejudiced by the error. If so, the error is not harmless and the conviction must be reversed. *People v. Fry, supra* (confrontation violation was not harmless); *see also People v. Harris,* 43 P.3d 221 (Colo.2002)(confrontation violation was harmless beyond a reasonable doubt).

■■■ Factors to be considered in determining whether a confrontation violation constitutes harmless error include the importance of the evidence to the prosecution's case, whether the evidence was cumulative, the presence or absence of corroborating or contradictory testimony on the material points of the improperly admitted evidence, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *People v. Fry, supra; People v. Harris, supra.*

■■■ Applying these factors here, we conclude that admission of the statements was not harmless beyond a reasonable doubt.

First, the improperly admitted statements were central to establishing an element of the offense of which defendant was charged. *See People v. Allee,* 740 P.2d 1 (Colo. 1987)(guilt or innocence of accessory after the fact depends, as to one element, on principal's guilt or innocence, although prosecution is not required to prove that principal was convicted); *see also Lowe v. People,* 135 Colo. 209, 309 P.2d 601 (1957)(reversing accessory conviction where evidence was insufficient to prove principal had committed murder).

The jury was instructed that the prosecution had to prove beyond a reasonable doubt that the person whom defendant assisted "had committed the crime of criminal attempt—murder in the first degree." The elemental instruction on attempted first degree murder and the affirmative defense instruction also required the prosecution to prove beyond a reasonable doubt that the cousin did not act in self-defense at the time of the shooting.

The importance of the judicially noticed facts to the prosecution's case is also evidenced by the prosecutor's closing argument. After reviewing evidence that the cousin was the shooter, the prosecutor reminded the jury that the court had taken judicial notice of the cousin's admission, and he emphasized the importance of that admission to disprove self-defense: "Because had it been self-defense [the cousin's] conduct would've been lawful, but ... [the cousin] admitted his conduct was unlawful. It was not self-defense." After defense counsel argued in closing that the jury should not rely on the cousin's admission, the prosecutor responded in rebuttal

that the admission should not be disregarded because it was judicially noticed.

Second, the evidence was to some extent cumulative, in that it was corroborated by testimony of M.M., the other person at whom the cousin had fired. However, M.M.'s testimony was subject to attack. Specifically, defendant established on cross-examination that M.M. and the shooting victim were best friends and that M.M. would do nothing to get the victim in trouble; that he disliked the cousin because the cousin had interfered with his friendship with the victim and had introduced the victim to drugs; that M.M. had been drinking before the encounter; and that he had given a different account of the shooting to the detective who interviewed him on the night in question.

Third, as noted, there was no cross-examination of either the cousin or the shooting victim. After the court ruled that the shooting victim's hearsay statement to the police officer would be admitted, defense counsel made an offer of proof that, had he been able to cross-examine the victim, he would have shown that the victim had a motive to provoke the cousin into a fight and that the victim went to the cousin's house with the intent of getting into a fight. The cross-examination, counsel asserted, would impeach the victim's account and would show that the cousin was acting in self-defense or in response to provocation.

Finally, as to the overall strength of the prosecution's evidence that the cousin had committed attempted first degree murder, there was ample evidence that a shooting had occurred. However, there was little evidence, apart from the erroneously admitted statements and M.M.'s testimony, of the circumstances of the shooting and, specifically, of whether the cousin was acting in self-defense.

In sum, we cannot conclude that admission of the challenged testimony was harmless beyond a reasonable doubt. Therefore, the case must be remanded for a new trial on the charge against defendant.

In light of our determination, we do not address defendant's contention that a mistrial should have been granted as a sanction for the prosecution's discovery violation. The People concede that, if a new trial is ordered, the issue will need to be addressed by the trial court in light of the evidence presented.

The judgment is reversed, and the case is remanded for a new trial in accordance with the views expressed here.

Judge WEBB and Justice KIRSHBAUM * concur.