2012 COA 154

CANTINA GRILL, JV, a Colorado joint venture; Airport Lounges, LLC, a Colorado limited liability company; Dos Amigos Joint Venture, a Colorado joint venture; F & B Concessions, LLC, a Colorado limited liability company; Pour La France B; Pour La France T; and Skyport Companies, Inc., a Colorado corporation, Plaintiffs–Appellants,

v.

CITY & COUNTY OF DENVER COUNTY BOARD OF EQUALIZATION, by and through its members, Claude PUMILIA, Manager of Revenue; Derek Brown, Manger of General Services; Stephanie O'Malley, Clerk and Recorder; Bill Vidal, Manager of Public Works; and Rosemary Rodriguez; and Paul Jacobs, as County Assessor, City and County of Denver, Colorado, Defendants–Appellees.

No. 11CA2270.

Colorado Court of Appeals, Div. III.

Sept. 13, 2012.

Hochstadt, Straw, Strauss & Silverman, P.C., Richard S. Strauss, Denver, Colorado, for Plaintiffs–Appellants.

Douglas Friednash, City Attorney, Max Taylor, Assistant City Attorney, Michelle Bush, Assistant City Attorney, Mitchel Behr, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROY.

¶ 1 In this property tax case, plaintiffs, food and beverage concessionaires at Denver International Airport (DIA) and holders of possessory interests in real property owned by the City and County of Denver (the City), appeal the trial court's judgment affirming the valuation of those possessory interests as assessed by defendants, the City and County of Denver County Board of Equalization (the Board) and the County Assessor. We affirm.

## I. Background

¶ 2 Plaintiffs (concessionaires) serve food and beverages to the traveling public at DIA. The City is the owner of the real estate and improvements at DIA and operates the airport through its Department of Aviation. Because DIA is owned by the City, it is exempt from ad valorem taxation.

¶ 3 Among them, concessionaires operate eleven concessions pursuant to virtually identical agreements with the City, the terms of which are not in dispute. While there may be other distinctions, the individual concessionaires have possession of spaces which house their operations, together with: (1) seating accommodations for the customers (a restaurant or lounge); or (2) a shared common area with seating accommodations for the customers (food court); or (3) no customer seating accommodation (vendor).

¶ 4 In 2002, the City began assessing concessionaires for their exclusive possessory interests in tax-exempt property in accordance with our supreme court's holding in *Board of County Commissioners v. Vail Associates, Inc.,* 19 P.3d 1263 (Colo.2001), and valuing those interests in accordance with section 39–1–103(17)(a), C.R.S.2011.

¶ 5 In May 2010, concessionaires received notices of valuation for ad valorem property tax purposes for their respective spaces. Concessionaires contested the valuations by unsuccessfully petitioning the Board. Concessionaires then sought review in the trial court pursuant to section 39–8–108(1), C.R.S. 2011.

¶ 6 The trial court conducted a trial de novo at which concessionaires argued that (1) section 39–1–103(17)(a)(II)(A) and (B), C.R.S. 2011, are unconstitutional; (2) their possessory interests are not taxable under *Vail Associates*; and (3) even if the possessory interests are taxable, the City did not follow the valuation procedures dictated by the statute. Following trial, the trial court entered its findings of fact and conclusions of law and

rejected concessionaires' claims. Concessionaires now appeal that judgment.

## II. Statutory Background and the *Vail Associates* Test

¶ 7 A "possessory interest" is a right to possess and use property that is less than the substantial equivalent of complete ownership. *See Mesa Verde Co. v. Bd. of Cnty. Comm'rs*, 178 Colo. 49, 51–52, 495 P.2d 229, 230–31 (1972).

¶ 8 In 1996, the General Assembly adopted what is now section 39–1–103(17), C.R.S.2011, which provides for valuation of possessory interests in exempt properties, and declared that (1) "the valuation of possessory interests in exempt properties is uncertain and highly speculative" and (2) it is necessary to provide specific standards for appraising possessory interests for tax purposes "to eliminate the potential for unjust and unequalized valuations."

¶ 9 As pertinent here, section 39–1–103(17)(a)(II)(A), C.R.S.2011, states:

Except for possessory interests in land leased or permitted for use for ski area recreational purposes valued in accordance with subparagraph (I) of this paragraph (a) and except as otherwise provided in subparagraph (III) of this paragraph (a), the actual value of a possessory interest in land, improvements, or personal property shall be determined by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal. When the cost or income approach to appraisal is applicable, the actual value of the possessory interest shall be determined by the present value of the reasonably estimated future annual rents or fees required to be paid by the holder of the possessory interest to the owner of the underlying real or personal property through the stated initial term of the lease or other instrument granting the possessory interest. . . .

¶ 10 Further, pursuant to section 39–1–103(17)(a)(II)(B), C.R.S.2011:

The rents or fees taken into account under the cost or income approach to appraisal under sub-subparagraph (A) of this sub-

paragraph (II) shall exclude that portion of the rents and fees required to be paid for all rights other than the exclusive right to use and possess the land, improvements, or personal property. Such rents or fees to be excluded shall include, but shall not be limited to, any portion of such rents or fees attributable to any of the following: Non-exclusive rights to use and possess public property, such as roads, rights-of-way, easements, and common areas. . . .

¶ 11 However, the General Assembly provided that section 39–1–103(17) would become effective only if our supreme court determined that the Colorado Constitution requires that possessory interests in tax exempt property be taxed. Ch. 297, sec. 4, § 39–1–103(17), 1996 Colo. Sess. Laws 1582. Section 39–1–103(17), therefore, became effective in 2001 when our supreme court so determined in *Vail Associates. See* 19 P.3d at 1280.

¶ 12 In *Vail Associates*, the supreme court held that a ski resort's possessory interest in tax exempt federal land was taxable provided that the possessory interest satisfied a three-pronged test demonstrating significant incidents of private ownership as determined by the possessor's right to possession, use, enjoyment, and profits of the property. *Id.* at 1278–79. The test announced in *Vail Associates* is that, to be taxable, the possessory interest must be such that (1) it provides a revenue-generating capability to the private possessor independent of the government property owner; (2) the private owner is able to exclude others from making the same use of the interest; and (3) the private ownership is of sufficient duration to realize a private benefit. *Id.*

## III. Constitutionality of the Statute

¶ 13 Concessionaires first contend that section 39–1–103(17)(a)(II)(A) and (B) are unconstitutional. Specifically, they argue that the statute is unconstitutionally vague, both on its face and as applied to them, and that its provisions are unconstitutionally overbroad. We address and reject each contention in turn.

## A. Standard of Review

¶ 14 Our review of challenges to the constitutionality of a statute is de novo. *People v. Villa,* 240 P.3d 343, 352 (Colo.App. 2009) (citing *Hinojos–Mendoza v. People,* 169 P.3d 662, 668 (Colo.2007)).

¶ 15 We presume that statutes are constitutional, and the party challenging a statute bears the burden of showing otherwise. *E–470 Public Highway Auth. v. Revenig,* 91 P.3d 1038, 1041 (Colo.2004). "To declare an act of the legislature unconstitutional is always a delicate duty, and one which courts do not feel authorized to perform, unless the conflict between the law and the constitution is clear and unmistakable." *People v. Goddard,* 8 Colo. 432, 437, 7 P. 301, 304 (1885).

## B. Facial Challenge

¶ 16 A statute is facially vague if its prohibitions are not clearly defined and persons of common intelligence must necessarily guess as to its meaning and differ as to its application. *See Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *see also People v. Hickman,* 988 P.2d 628, 643 (Colo.1999); *Rickstrew v. People,* 822 P.2d 505, 506–07 (Colo. 1991). Vague laws offend due process because they (1) fail to give fair notice of the conduct required; or (2) do not supply adequate standards for those who apply them in order to prevent arbitrary and discriminatory enforcement. *People v. Baer,* 973 P.2d 1225, 1233 (Colo.1999); *see* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25. When, as here, a statute does not burden protected speech, a court should sustain a facial challenge only where the "enactment is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495–96, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

¶ 17 Concessionaires argue that section 39–1–103(17)(a)(II)(B) is facially vague because it does not define which possessory interests are taxable. However, as the trial court noted and we agree, this argument necessarily fails because the statute does not impose a tax or define taxable interests. The Constitution imposes the tax, and the courts have determined what is, or is not, a taxable possessory interest. *See* Colo. Const. art. X, § 3; *Vail Associates,* 19 P.3d at 1280.

¶ 18 The statute merely creates a methodology for valuing a taxable possessory interest in tax exempt property, for ad valorem tax purposes, by the use of the rents and fees paid by the occupier to the owner. § 39–1–102(14)(a), C.R. S.2011 ("Real property means ... *[a]ll* lands or *interests* in lands...."); § 39–1–102(16), C.R.S.2011 (" 'Taxable property' means all property, real and personal, not expressly exempted from taxation by law."); *see generally Vail Associates,* 19 P.3d at 1278–80.

¶ 19 The statute does not impose a tax, nor does it leave individuals of common intelligence puzzled as to the method for valuing possessory interests in tax exempt real property. Therefore, we conclude the statute is not facially unconstitutional.

## C. As–Applied Challenge

¶ 20 We likewise reject concessionaires' contention that the statute is unconstitutional as applied to them because their possessory interests are tax exempt.

¶ 21 A statute is vague as applied if it does not, with sufficient clarity, prohibit or require the conduct against which it is to be enforced. *People v. Couillard,* 131 P.3d 1146, 1151 (Colo.App.2005). A defendant may test a law for vagueness as applied only with respect to his or her own particular conduct. *Id.* If the statute is not vague as applied to the challenger, it will be enforced even though it may be vague as applied to the conduct of others. *City of Colorado Springs v. Blanche,* 761 P.2d 212, 219 (Colo. 1988).

¶ 22 As we discuss below, concessionaires' possessory interests are made taxable by the Colorado Constitution under the test announced in *Vail Associates.* Therefore, we cannot say the statute, a set of procedures for tax valuation, has been applied to their properly taxable possessory interests in an unconstitutional manner.

¶ 23 Accordingly, we conclude that section 39–1–103(17)(a)(II)(B) is not unconstitutionally vague as applied to concessionaires.

### D. Overbreadth

¶ 24 Concessionaires further contend that the statute is unconstitutionally overbroad. We again disagree.

¶ 25 The overbreadth doctrine is used primarily to challenge statutes threatening the exercise of fundamental constitutional rights—most often restrictions on free speech. *People v. Mason,* 642 P.2d 8, 13 (Colo.1982). A statute is facially overbroad if, in addition to requiring conduct that is not constitutionally protected, its requirements sweep in a substantial amount of activity that is constitutionally protected. *People v. Shepard,* 983 P.2d 1, 3 (Colo.1999). The overbreadth doctrine is applied only as a "last resort." *Hickman,* 988 P.2d at 636.

¶ 26 The statute's tax valuation provisions do not infringe on any constitutionally protected right. *See Vail Associates,* 19 P.3d at 1275 (noting that the Colorado Constitution provides that "all real and personal property, as defined by the legislature, *must* be taxed unless it is exempted in accordance with law") (emphasis added); *People ex rel. Rogers v. Estate of Waterman,* 108 Colo. 263, 272, 116 P.2d 204, 210 (1941) (noting that tax deductions and "[e]xemptions are matters of grace and not of right").

¶ 27 Accordingly, we reject concessionaires' argument that the statute is unconstitutionally overbroad.

### IV. Taxability

¶ 28 Concessionaires next contend that the trial court abused its discretion in concluding that their possessory interests are taxable under the first two prongs of the *Vail Associates* analysis. We disagree.

¶ 29 When a party appeals to the district court from a taxing authority's decision, the district court conducts a de novo review by conducting a trial and then entering its own findings of fact, conclusions of law, and judgment. § 39–8–108(1), C.R.S. 2011. In reviewing the trial court's decision, we defer to the trial court's findings of fact unless they are clearly erroneous and not supported by the record. *Arapahoe Cnty. Bd. of Equalization v. Podoll,* 935 P.2d 14, 18 (Colo.1997). However, we review its legal conclusions de novo. *E.I. DuPont De Nemours & Co. v. Douglas Cnty. Bd. of Equalization,* 75 P.3d 1129, 1131 (Colo.App.2003). Colorado law recognizes a strong presumption against exempting property from taxation. *Mesa Verde Co.,* 178 Colo. at 57, 495 P.2d at 233–34.

### A. Ability to Generate Independent Revenue

¶ 30 Concessionaires contend that their possessory interests do not meet the first prong of the *Vail Associates* analysis because of the extensive government controls imposed on their business operations. We disagree.

¶ 31 The first prong of the *Vail Associates* analysis is that the possessory interest is taxable if it "provides a revenue-generating capability to the private owner independent of the government property owner." *Vail Associates,* 19 P.3d at 1279. There, our supreme court concluded this requirement was satisfied when the holder of the possessory interest relied on the federal property "to derive revenues for private benefit." *Id.* at 1280.

¶ 32 Concessionaires assert that the degree of control exercised by the City over their businesses—price controls, menu limitations, hours of operation, and security, for example—preclude "independence" under this prong of *Vail Associates.* The trial court concluded that although concessionaires' "businesses operate under tighter restrictions than they might in other venues, or even the fact that the customer base for the businesses is a by-product of the business conducted by the airlines at DIA, does not negate the fact that the revenue generated by the concessionaires is independent of the City."

¶ 33 At the outset, we note our disagreement with concessionaires that "independence" under the first prong of *Vail Associates* turns on the level of control or—in concessionaires' estimation, coercion—exer-

cised by the governmental owner. As the trial court correctly noted, the first prong of *Vail Associates* turns on the source of the possessory interest holder's revenue, and more specifically, whether the government owner is the only or dominant source of that revenue. *See Mesa Verde Co.*, 178 Colo. at 57, 495 P.2d at 233–34. For example, if a municipality privatizes street and road maintenance, retains and pays a private contractor for that purpose, and permits the contractor to use the municipality's facilities to store supplies and house and maintain equipment, the contractor's possessory interest in those facilities would presumably not be taxable under the *Vail Associates* analysis.

¶ 34 Here, there is substantial evidence that the traveling public provides the revenue base for the concessionaires. For example, in 2010, the concessionaire with the highest reported gross revenues reported $8,766,64.07, from the traveling public; and the concessionaire which reported the least gross revenues reported $258,028.30, from the same source.

¶ 35 While the City has imposed operational restrictions on concessionaires relating to the price of their products, hours of operation, and menus, and requires that employees be cleared by security, the record is quite clear that all, or virtually all, of concessionaires' revenue is generated from the traveling public. The operating restrictions are not relevant in the application of the first prong of the *Vail Associates* analysis, or, for that matter, any other prong.

¶ 36 Hence, the trial court did not abuse its discretion in concluding that concessionaires' possessory interests are capable of generating revenue independent of the City.

## B. Exclusivity

¶ 37 Concessionaires argue that the trial court abused its discretion in concluding that there was sufficient exclusivity under the agreements to make their possessory interests taxable under the second prong of the *Vail Associates* analysis. We are not convinced.

¶ 38 The second prong of the *Vail Associates* analysis relates to the ability of the holder of the possessory interest to exclude others from making the same use of the interest. *Vail Associates*, 19 P.3d at 1279.

¶ 39 In the agreement, the City grants the concessionaire the right to occupy, improve, and use the concession space for food and beverage purposes. Our supreme court in *Vail Associates* stated that the possessory interest necessarily involves some degree of exclusivity; however, absolute exclusivity is not required. *Id.* at 1280. Moreover, concurrent uses of property are not necessarily inconsistent with exclusivity. *Id.* Nor, as a matter of law, does a possessory interest depend on the ability to exclude competition. *See id.* (citing with approval *Scott–Free River Expeditions, Inc. v. Cnty. of El Dorado*, 203 Cal.App.3d 896, 250 Cal. Rptr. 504 (1988)). The proper inquiry, rather, is whether others may make the same physical use of the possessory interest as that of the leaseholder. *See id.*

¶ 40 Concessionaires appear to premise their argument on the following provision of the agreement:

> City reserves the right to grant to other concessionaires the right to operate restaurants and sell food and beverages in *other locations* in the Airport, and Concessionaire understands and agrees that its right to the permitted uses is not exclusive.

(Emphasis added.)

¶ 41 We conclude that concessionaires' argument misinterprets the exclusivity prong of *Vail Associates*, the agreement, or both. The nonexclusivity provision permits the City to enter similar agreements with other concessionaires to sell similar food and beverage items in *other locations*. The only reasonable interpretation of this provision is that competition is permissible. Nowhere, however, does the provision permit the City to allow a second concessionaire the right to operate out of an existing concessionaire's locations.

¶ 42 Here, the trial court concluded that concessionaires' possession and occupancy of the taxable possessory interests were sufficiently exclusive to satisfy the second prong of the *Vail Associates* analysis. This conclu-

sion is supported by the record, and thus we may not disturb it on appeal.

## V. Valuation

¶ 43 Concessionaires' final contention is that the trial court erred in approving the City's valuation of their possessory interests. We disagree.

 ¶ 44 The taxpayer has the burden to show by a preponderance of the evidence that the Board's valuations are incorrect. *Cherry Hills Country Club v. Bd. of Cnty. Comm'rs*, 832 P.2d 1105, 1107 (Colo.App. 1992). Colorado law recognizes a strong presumption against exempting property from taxation. *Mesa Verde Co.*, 178 Colo. at 57, 495 P.2d at 233–34.

¶ 45 As previously discussed, section 39–1–103(17)(a) sets forth the method used to value possessory interests in exempt properties. The method permits the use of the "present value of the reasonably estimated future annual rents or fees required to be paid by the holder of the possessory interest to the owner of the underlying real or personal property through the stated initial term of the lease or other instrument granting the possessory interest." § 39–1–103(17)(a)(II)(A). The "rents or fees" used in this calculation shall be the actual contract rents which are reasonably expected to be paid, unless they are not market rents for that type of property. *Id.*

¶ 46 After determining the appropriate rents, an assessor must then make any applicable deductions or exclusions. *See* § 39–1–103(17)(a)(II)(A)–(B). If the rents used in the valuation model include amounts paid for anything "other than the exclusive right to use and possess the land, improvements, or personal property," such amounts must be excluded from the calculation. § 39–1–103(17)(a)(II)(B). The statute sets forth a nonexhaustive list of rents and fees that must be excluded. For example, any fees that are paid as "reimbursement to the owner of the underlying real or personal property of the reasonable costs of operating, maintaining, and repairing the land, improvements, or personal property to which the possessory interest pertains" must be excluded. *Id.*

However, the exclusion of such reimbursements is proper only if "the types of such costs can be identified with reasonable certainty from the documents granting the possessory interest." *Id.*

¶ 47 Pursuant to the agreement, concessionaires must pay to the City rents and fees which are the greater of either a minimum monthly guaranteed rent or a percentage of their monthly gross revenues (Percentage Rent). The minimum monthly guaranteed rent is a fixed number calculated by multiplying the square footage of the space exclusively possessed by the concessionaire by a fixed dollar amount. The minimum monthly guaranteed rent is the minimum rent for the premises occupied by the concessionaire, which, presumably, benefits the concessionaire.

¶ 48 At trial, a representative of the City's tax assessor, qualified as an expert on the valuation of possessory interests, testified that he used the minimum monthly guaranteed rent, reduced for the value of the use of the common area for those concessionaires with such use, as the reasonably estimated future annual rents or fees. The representative then opined that the only qualifying deduction or exclusion required under section 39–1–103(17)(a)(II)(A) and (B) was the value of the common areas with respect to which a concessionaire's occupancy was not exclusive, for example the food court space. The trial court ultimately adopted the representative's valuations of concessionaires' possessory interests, including his recommended adjustments.

 ¶ 49 On appeal, concessionaires first contend that the minimum monthly guaranteed rent was not an appropriate valuation of the "rents or fees reasonably expected to be paid" under section 39–1–103(17). However, as the trial court found, and we agree, the minimum monthly guaranteed rent is the minimum rent the City is entitled to and presumably benefits concessionaires. Further, concessionaires have not proposed a lesser amount or a means of determining one.

 ¶ 50 Concessionaires also argue that the representative failed to make the proper

deductions and exclusions. As noted above, if the rent used in the valuation model or, here, the minimum monthly guaranteed rent includes amounts paid for anything "other than the exclusive right to use and possess the land, improvements, or personal property," then those amounts must be excluded. Examples of payments which must be excluded include amounts paid for use of the common area, amounts paid for the "right to conduct a business," and payments which constitute reimbursements to the tax exempt property owner. However, in order for a payment to be properly excludable, the payments must be identifiable "with reasonable certainty from the document[ ] granting the possessory interest." Here, the "document[ ] granting the possessory interest" is the agreement.

¶ 51 Concessionaires assert that the rent paid constitutes "reimbursements" to the City for its costs of operating and maintaining the airport and for the "right to conduct a business"—thereby claiming their minimum monthly guaranteed rent is not for the exclusive use of their concession spaces. This assertion appears to ignore the plain language of the agreement:

> CONCESSION RIGHTS GRANTED. City grants to Concessionaire the right to occupy, improve and use the Concession Space consistent with and subject to the terms and provisions of this Agreement.

> COMPENSATION. Concessionaire covenants and agrees, without offset, deduction or abatement, to pay City as compensation *for the rights and privileges herein granted by the City* the greater of (a) some (percentages) of the monthly Gross Revenues, as herein defined, ("Percentage Compensation Fee") derived by the Concessionaire from the sale of all food, beverages, and merchandise, or (b) a minimum monthly guarantee of $_____ ("Monthly Guarantee").

(Emphasis added.) In our view, the plain meaning of the agreement is that the compensation is *for the rights and privileges* granted by the City, which must be the right to *occupy, improve, and use* the concession space.

¶ 52 At trial, concessionaires admitted that nothing in the agreement identifies with specificity, as required by the statute, that their rent payments to the City are reimbursements for the costs of "operating, maintaining or repairing" the airport. Therefore, any City use of the revenues from concessionaires to operate, maintain, and repair the airport is of no consequence. The trial court found, and we agree, that concessionaires failed to meet their evidentiary burden in demonstrating that the minimum monthly guaranteed rent should have been excluded as payments to the City for some sort of operational upkeep.

¶ 53 We therefore necessarily reject concessionaires' contention that their rents paid are excludable because those payments are for the "right to conduct a business."

¶ 54 Accordingly, because the record supports the findings of the trial court, with respect to both the rents paid and deductions made therein—and concessionaires have failed to provide contrary evidence—the trial court's factual conclusions must be upheld and concessionaires' contentions therefore fail.

¶ 55 The judgment is affirmed.

Judge DAILEY and Judge RICHMAN concur.